# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

PATTERSON v. EAKIN & OTHERS.

November 6th, 1890.

1. JUDICIAL SALES.—*Rescission after Confirmation.*—After sale confirmed, it will be set aside only for some fraud, accident. mistake, or misconduct of the purchaser or other person connected with it, working injustice to the person complaining. *Karn & Hickson* v. *Rorer Iron Co.,* 86 Va., 754.

2. CHANCERY PRACTICE.—*Consolidation.*—In its discretion a court of equity may order causes pending therein to be consolidated and heard together.

3. IDEM.—*Decedent's Land—Notice of Confirmation —Case at Bar.*—Testator, owning a store-house whereon was a vendor's lien, and a farm, devised the latter to his wife and children. Store-house and lot, in a suit to enforce the lien, were sold for enough to pay the lien. By an account in that suit, it was ascertained that the only other debt was an unsecured one, which with the lien had been assigned to the purchaser Later, in suit by the devisees to sell the farm, and after paying the debts, to distribute the proceeds, sale of the farm was decreed, and the causes consolidated. Sale was made and confirmed in vacation without notice to the creditor : *held,* the creditor as purchaser became party to the first suit, and by the consolidation, also to the last suit, and as such party, was, under Code, section 3426, entitled to notice of the confirmation of the sale made in vacation ; but the confirmation will not be set aside unless he was prejudiced by want of notice.

Argued at Staunton.   Decided at Richmond.

Appeal from a decree of the circuit court of Botetourt county, rendered 26th May, 1890, in a chancery suit wherein J. P.

Spessard was complainant and the personal representative and widow and heirs of W. E. Eakin, deceased, were defendants; and a chancery suit wherein J. H. H. Figgat was complainant against the same defendants, which suits were consolidated and heard together.

This case, so far as it is necessary to be stated, is as follows:

In 1878, William E. Eakin, late of Botetourt county, died seized and possessed of a lot of land, upon which was a storehouse, in the town of Fincastle, and a farm containing one hundred and ninety-five acres, situate just outside of the town. The latter he devised by his will to his wife for life, and at her death to his children. Upon the former was a vendor's lien, and in 1883 a suit was brought in the said circuit court to enforce it. The parties to this suit were J. P. Spessard, the holder of the lien, and the executrix, heirs, and devisees of the decedent. The cause was referred to a commissioner to take an account of debts, who duly executed the decree and returned his report to the court. From this report it appeared that the indebtedness of the estate consisted of two debts only, one the debt secured by the vendor's lien, the other an unsecured debt to M. W. Camper for seven hundred and fifty dollars, which two debts aggregated, principal and interest, two thousand one hundred and ninety-four dollars and eighty-seven cents, as of November 1, 1885.

Under a decree of the court the lot was then sold to one Fulwiler for two thousand one hundred and fifty dollars, a sum more than sufficient to satisfy the costs and vendor's lien, and the sale was confirmed. The purchaser afterwards assigned his interest to the appellee, J. H. H. Figgat, who also took an assignment of the two debts above-mentioned, as the record showed.

In this state of things a suit was brought in the same court in 1889 by the adult devisees against the infant devisees to sell the farm. The bill referred to the Spessard suit as having been brought to subject the testator's property to the payment

of his debts, and alleged that the interests of the devisees, and especially the interests of the infant children, would be greatly promoted by a sale of the farm and a suitable investment of the proceeds for their benefit. And the prayer of the bill was that the land be sold, and that, "after satisfying the balance of the indebtedness of the estate," the proceeds be invested, etc. Testimony in support of the allegations of the bill was taken, and a sale was ordered. The decree authorized the commissioner of sale to sell publicly or privately, as he might deem best, but provided that in the event of a public sale, he should first advertise the time, place, and terms of sale for four successive weeks in the Fincastle *Herald.* It was also ordered by the same decree that the cause be *consolidated* and heard with the Spessard suit.

The commissioner of sale afterwards reported that he had sold the farm at public auction to S. F. Patterson, the appellant here, for one thousand five hundred and fifty dollars, after having advertised the sale as directed by the decree of sale, and that, in his opinion, the sale was a good one and ought to be confirmed. This report, to which there was no exception, was filed on the 15th of April, 1890, and on the same day notice was given by Patterson to all the parties to the suit last mentioned, that is, to the widow and children of the testator and to the guardian *ad litem* of the infant children, that on the 19th of the same month he would move the judge of the circuit court, in vacation, to confirm the sale, which motion was made accordingly, and the sale was confirmed without objection.

Afterwards, however, to-wit: at the May term, 1890, a petition was filed by Figgat alleging that, as assignee as aforesaid, he was a creditor of the estate, and praying that the sale to Patterson be rescinded. He also offered an upset bid of twenty per cent. for the land. The grounds upon which the sale was asked to be rescinded were these: (1) Because it was made without any account of the debts of the decedent having

been taken; (2) because it was not advertised as directed by the decree of sale; (3) because it had been confirmed without notice to the petitioner or to any other persons than the parties to the suit of *Eakin* v. *Eakin*, and (4) because the land was sold for an inadequate price.

The application to rescind the sale was opposed by Patterson, who filed affidavits to the effect that after confirmation of the sale he had taken possession of the land and improved it, and had sold a part of it to a *bona fide* purchaser, who had paid a part of the purchase-money; that the land had brought a fair price, and that the devisees of the testator, the only parties really interested, were satisfied with the sale and wished it to stand. The circuit court, however, when the cause came on to be heard, set aside the sale on the ground that proper notice of the motion to confirm it had not been given, and from that decree Patterson appealed.

*B. Haden*, and *J. E. Penn*, for the appellant.

*J. H. H. Figgat*, for the appellees.

Lewis, P. (after stating the case), delivered the opinion of the court.

1. Section 3426 of the Code, under which the proceeding to confirm the sale was had, enacts as follows: "On the motion of any party to a chancery cause pending in a circuit court, on reasonable notice to the adverse party or his counsel, the judge of such court may, in vacation, make any interlocutory decree or order, or direct any proceeding therein preparatory to the hearing of the cause on the merits; and may also, after like notice to the adverse party or his counsel, and to the purchaser, make an order confirming or refusing to confirm a sale made under a decree in any such cause."

We do not doubt that, according to the true construction of

this section, the appellee, Figgat, was entitled to notice of the motion to confirm the sale, although he was not actually a party to the suit in which the sale was made. He was, confessedly, in a general sense at least, a party to the Spessard suit, which, according to the doctrine of *Simmons* v. *Lyles*, 27 Gratt., 922, was a creditors' suit, although the bill was filed merely to enforce the vendor's lien, saying nothing of other creditors. At all events, it was competent for the creditors, or any of them, to come in and prove their debts, and have them paid out of the balance remaining after the vendor's lien was satisfied. *Ellicott* v. *Welch*, 2 Bland Ch., 242. And being thus a party to that suit, which was consolidated with the suit of *Eakin* v. *Eakin*, the said appellee was interested in the sale, and ought, therefore, to have been notified, either personally or through his counsel, of the motion to confirm it. It would have been competent for him to have opposed the confirmation of the sale, and to have appealed from the order confirming it, as much so as if he had been originally a party to both suits. He was, therefore, an "adverse party" to the purchaser within the meaning of the statute, and as such entitled to notice.

The appellant, however, denies that it was competent for the court to consolidate the suits. But we do not concur in this view. Although brought by different plaintiffs, they are substantially against the same defendants, and, to a certain extent, have a common object, *i. e.*, the administration of the testator's estate; for the one, as we have seen, is a creditor's suit, and the other, in effect, prays for a settlement of the estate in the prayer that, *after the debts are paid*, the balance of the proceeds of the sale of the land be invested for the benefit of the devisees; so that a settlement of the estate is a necessary preliminary to the granting of the relief prayed for in the bill. There is no reason, then, why the suits should not have been consolidated, or why two accounts should have

been taken, thus adding to the costs and the delay of the litigation, when one is ample for the purposes of both suits.

But it is contended that the question is one, not of convenience, but of power in the court; in other words, that, while causes may be heard together, there is no such thing as their consolidation in equity. But the common practice of our courts is to the contrary, although there is no decision of this court defining the power of the chancellor in this particular, and the existence of the power has been doubted, and in some cases denied. 2 Bart. Ch. Pr., 819, and cases cited. In *Claiborne* v. *Gross* and *Wimbish* v. *same*, 7 Leigh, 331, where separate suits were brought by assignees of two judgments to set aside as fraudulent a deed made by the judgment debtor, and which were ordered to be consolidated, two judges out of three held the order ineffectual, Judge Carr, in his opinion quoting with approval the language of Chief Baron Richards in *Fonnan* v. *Blake*, 7 Price, 654, who said: "I never heard of an order, in the course of my experience, for consolidating causes in equity nor can I conceive upon what principle it can be done." The third judge, however, (Tucker, P.), saw no reason why, when separate suits are brought which might have been brought by the plaintiffs jointly, they may not be consolidated into a single cause, though he did not think it necessary to decide the point. And in *Demis & Co.* v. *Johnston & Wolfe*, 27 Gratt., 805, an order was approved which consolidated three suits, by the same plaintiffs, against the same defendants, to subject the same land to the payment of their debts. In a subsequent case, however (*Barger* v. *Buckland*, 28 Gratt., 850), where separate suits were brought by different plaintiffs, against the same defendant, to subject his lands to the payment of the debts due the plaintiffs, respectively, this court said it was doubtful whether the causes could have been properly consolidated without the plaintiffs' consent, the court distinguishing the case from *Stephenson* v.

*Taverners*, 9 Gratt., 398, which was a creditor's suit for the administration of assets.

In the last-mentioned case, and in numerous subsequent cases, it has been held that where several suits are brought by different creditors against the same estate, the court will order the proceedings in all the suits but one to be stayed, and will require the several parties to come in under the decree in that suit, so that only one account of the estate may be necessary. And the same rule applies in all cases where several suits are brought for the administration of the same estate, no matter by whom brought. 1 Daniell Ch. Pr. (5 Am. Ed.), 797.

This, it must be admitted, is, if not a technical consolidation of suits, at least the exercise of a power analogous to it, and there is no more legislative authority for the one than the other. If the power exists in either case, it is because it is one of the implied or inherent powers of the court to make reasonable rules for the transaction and regulation of its business, and it would be extraordinary if such a power did not exist.

A question as to the consolidation of causes in equity came before the court of appeals, of West Virginia, in *Beach* v. *Woodyard*, 5 W. Va., 231, in which case the view was expressed that, unless governed by statute, the rule is the same in equity as at law; that is to say, that the power · exists, but that it is not a matter of right, but rests in the discretion of the court, to be exercised according to the particular circumstances of each case.

To the same effect is *Burnham* v. *Dalling*, 16 N. J. Eq., 310. In that case, in granting a motion to consolidate separate suits by three wards against the defendant as their guardian for an account, it was said that the power of a court of equity to consolidate causes, with or without the consent of the complainant, rests upon the clearest principles, and is essential to prevent abuses, and to protect defendant against oppression; that the order for consolidation is not of right, but is matter

of discretion, and upon such terms as the court may direct; that the same reason exists for the consolidation of causes in equity as at law, although, from the nature of the proceeding, more caution may be required in the exercise of the power by a court of equity. And referring to the remark of Chief Baron Richards, above quoted, it was said:

"This opinion is the more remarkable, as in the earlier case of *Keighley* v. *Brown*, 16 Ves., 344, a similar motion was made on the part of the defendants to consolidate several suits, and both Sir Samuel Romilly, by whom the motion was made, and the Chancellor (Lord Eldon) speak of the practice as a familiar one. The only question seems to have been whether it was a special application, or of course. And the next day the Lord Chancellor said he had consulted Baron Thompson of the Exchequer, who had no idea that the motion was of course, though sometimes made under special circumstances."

The rule announced in these decisions is, we think, founded in reason, and is the true one. It was, therefore, competent for the court below, in the exercise of a sound discretion, to consolidate the suits, as it did, and having consolidated them, the appellee, Figgatt, became a party, in a general sense, to both suits, and as such, ought to have been given notice of the motion to confirm the sale; for the statute authorizing proceedings in vacation must be followed, if at all, with strictness.

2. But it by no means follows that the decree, setting aside the sale because notice was not given, is right. On the contrary, it is plainly erroneous, for the question is, Has the appellee been prejudiced by the failure of the purchaser to give him notice?

In a number of recent decisions this court has held that a judicial sale which has been absolutely confirmed by the court that ordered it, is not to be set aside for mere irregularity, or for mere inadequacy of price, or for an increase in price

alone, but that to rescind it, some special ground must be laid—
something which goes to the very substance of the contract—
such as fraud, accident, mistake, or misconduct on the part of
the purchaser, or other person connected with the sale, which
has worked injustice to the party complaining. *Va. Fire and
Marine Ins. Co.*, v. *Cottrell*, 85 Va., 857; *Berlin* v. *Melhorn*, 75
Ia., 639; *Langyher* v. *Patterson & Bash*, 77 Id., 470; *Karn &
Hickson* v. *Rorer Iron Co.*, 86 Id., 754. And if we apply this
rule to the present case, the error in the decree is apparent.

The petition filed in the court below praying that the sale
be rescinded, does not charge fraud or any other recognized
ground for the rescission of a sale. It does not even allege
that the rights of the petitioner have been prejudiced, and
there is nothing to show that they have been. It appears that
the town property sold for enough to satisfy the vendor's lien,
and that the farm sold for more than enough to pay the Cam-
per debt; so that by no possibility could the petitioner have
been prejudiced by the order confirming the sale.

It is true it was stated, in general terms, in the petition that
he " had filed an attachment against the interest of Wm. C.
Eakin," one of the adult devisees, but it is not stated when or
where or for what the attachment was sued out, and there is
no proof whatever in the record of any existing indebtedness
on the part of the said Wm. C. Eakin to the petitioner or to any
other person. The decree of confirmation, in any view, was
not void, and, in asking that it be set aside, it was incumbent
on the petitioner to show affirmatively that he had been pre-
judiced by it; for in such a case the rule applies that that
which does not appear does not exist. And if his rights have
not been prejudiced, then he is not entitled to have the sale re-
scinded, no matter what irregularities may have been com-
mitted. This is now the settled doctrine both in England and
in Virginia relating to judicial sales, and, as Lord Eldon said
in *White* v. *Wilson*, 14 Ves., 151, a more mischievous thing

could not be done to suitors than to relax farther the binding nature of such contracts.

The decree must, therefore, be reversed, and the cause remanded · for further proceedings not inconsistent with this opinion.

DECREE REVERSED.