MAURICE S. LUMIANSKY *vs.* OZI TESSIER.

Bristol. October 29, 1912. — November 27, 1912.

Present: RUGG, C. J., MORTON, HAMMOND, BRALEY, & DeCOURCY, JJ.

*Landlord and Tenant,* Repairs, Eviction. *Theatre. Covenant. Practice, Civil,* Consolidation of cases, Discontinuance, Parties. *Equity Pleading and Practice,* Consolidation of cases, Decree.

Where real estate is leased to be used for a vaudeville and moving picture show, and the lease contains a statement that "a license, for operating a vaudeville and moving picture show on the premises as now equipped, has been obtained," and also contains a covenant by the lessee that the premises "shall be kept in good and tenantable repair and condition during the term of said lease at the expense of the lessee," the lessor to make outside repairs, and thereafter the State police notify the lessor that certain interior changes must be made in the theatre under penalty of a revocation of the license if not made, and the lessee knows of these requirements, but the changes are not made and the license is revoked, the revocation of the license, which is due to the failure of the lessee to perform his obligations under the lease, gives him no claim upon the lessor and does not excuse him from his obligation to pay the stipulated rent.

A covenant of the lessor in a lease of certain real estate "that the heating apparatus to be connected with and used in the premises hereby leased and demised shall be installed at the expense of the lessor" does not require a heating apparatus to be installed on the premises, and may be performed by the installation in the cellar of an adjoining building belonging to the lessor of a heating apparatus connected with and sufficient to warm the demised premises.

Where the lessor of a theatre during an inspection of the theatre by the State inspector ordered the lessee off the premises and was the aggressor in a controversy with the lessee in which they came to blows and the lessee was expelled, but the lessor did not intend permanently to evict the lessee, his purpose being to keep the lessee away from the inspector rather than out of the building, and the acts of the lessor did not deprive the lessee of the beneficial use of the premises after the inspection, such temporary forcible expulsion of the lessee does not constitute an eviction.

Discussion by RUGG, C. J., of three different methods by which cases at law and in equity may be consolidated.

In a suit in equity by a lessee against his lessor, to enjoin the defendant from collecting any rent until he should perform the covenants and conditions of the lease according to the contention of the plaintiff, it appeared that the plaintiff had brought an action at law against the defendant for damages from an alleged breach of the covenants of the lease, and that the defendant had brought an action at law jointly against the plaintiff and a guarantor of the rent for damages from the plaintiff's alleged breach of the covenant to pay rent. An interlocutory decree in the suit in equity, made with the consent of all the parties, ordered that the two actions at law "be consolidated with this proceeding and damages assessed herein, should any be found due; and that said two actions be heard with this suit at a session of the court without juries." The cases were referred to a master, who filed in the suit in equity a single report covering the matters in issue in all the cases. The final decree ordered that in the suit in equity the bill be dismissed, that in the plaintiff's action at law judgment be entered for the defendant, and that in the defendant's action at law, which the defendant had discontinued as against the plaintiff, judgment be entered against the guarantor of the rent. *Held*, that the consolidation of the cases by the interlocutory order was merely for convenience of trial, and that the two actions at law had not become merged in the suit in equity but still were pending, so that the separate judgments properly could be given in them.

The plaintiff in an action at law against two defendants may discontinue his action as against one of them after a hearing by an auditor but before the case has been tried on its merits.

Whether a lessor in an action for rent due under a covenant in a lease properly can join as defendants the lessee and one who guaranteed the payment of the rent under a separate instrument, *quaere.*

RUGG, C. J.  This is a suit in equity growing out of a written lease of certain premises to be used for a vaudeville and moving picture show.  The lease was dated on the third day of May, 1909, for a term of three years from the tenth day of the same month.  Among other clauses the lease contained these provi-

sions: "the premises, including the furniture and fixtures, shall be kept in good and tenantable repair and condition during the term of said lease at the expense of the lessee, reasonable use and wear thereof excepted . . . the lessor shall keep in repair the outside parts of the premises herein leased . . . the heating apparatus to be connected with and used in the premises herein leased and demised shall be installed at the expense of the lessor, not later than October 1, 1909. . . . The lessor hereby covenants . . . that the premises, as so equipped, have been inspected and passed by the proper authorities; that a license, for operating a vaudeville and moving picture show on the premises as now equipped, has been obtained."

The plaintiff brought an action at law against the defendant for damages alleged to have arisen from a breach of the covenants of the lease, and the defendant commenced an action against the plaintiff and one Barnard Lumiansky for breach of covenants in the lease and for failure to pay rent. The three cases were tried together before a master,* who, in accordance with the order entered by consent of all parties, filed in the suit at bar a single report covering matters in issue in all the cases. A final decree † was entered, from which the plaintiff and Barnard Lumiansky appealed.

At the time of the lease the building was not completed, but the building was licensed until August 1, 1909. St. 1908, c. 335. Before the expiration of that license the State inspector of the Massachusetts district police required certain work to be done in order to complete the building. This was done by the lessor, and thereafter another license was issued, which by its terms ran to August 1, 1910. Both these licenses were in the name of the owner of the building. Shortly thereafter the State police notified the lessor that certain interior changes must be made in the theatre, with the suggestion that if they were not made he should recommend the revocation of the license. No notice was given to the lessee by the inspector or by the lessor, but the master finds that the lessee knew these requirements, and made no effort to put the premises in condition to meet them. On November 4, 1909, the license was revoked, and on February 11, 1910, the bill in equity was filed, praying that the defendant should be enjoined from

---

\* L. Elmer Wood, Esquire.          † Made by *Fox*, J.

collecting any rent until he should perform the covenants and conditions of the lease. On October 26, 1911, the plaintiff filed a supplemental bill, alleging an eviction on August 24, 1910.

The plaintiff has argued that, inasmuch as the license was issued to the lessor, his failure to see that it was continued in force was a breach of the lease, invoking the rule that although the lessor undertook the work gratuitously, he is liable for failure in its performance. But this rule does not apply. Whether the license is one which should be issued to the owner of the building or to the occupant is of no consequence. The lease contains no covenants on the part of the lessor that the license shall be continued in force. The cause of its revocation was a failure to make repairs, changes and alterations in the interior of the theatre, the obligation to do which under the terms of the lease rested on the lessee. For failure to perform his own obligations the plaintiff cannot hold the lessor responsible. This branch of the case is within the authority of *Taylor* v. *Finnigan*, 189 Mass. 568.

One of the matters specified by the inspector of the district police was an improper system of ventilation. As to this the master found that the ventilator openings as planned and constructed by the lessor were under the stage, and that at the request of the lessee they were placed over the stage, but upon condition that if they were not right the lessee would be obliged to alter them at his own expense, to which condition the lessee assented. For such a change plainly the lessor is not responsible under his lease. The lessee also excepts to the finding that the heating apparatus, which was installed in the cellar of premises belonging to the lessor and adjoining the leased premises, was a compliance with the terms of the lease. But the lease did not require a heating apparatus to be installed on the premises. It was only to be connected with and adequate for the purpose of warming the demised premises. The master finds that in this respect the apparatus was sufficient. The lessee had an implied license to use the premises where the heating apparatus was located, although not included in the demised premises, so far as necessary to enable him to warm the building. The fact that stores in the theatre building were connected by piping is now of no consequence, because no complaint was made on this ground until after the actions were brought; and the master has found that the stores might easily

have been disconnected by the lessee on the demised premises at small expense. Although the premises were not completed at the time of the lease, the master finds that they have been substantially completed, and that the plaintiff has suffered no injury thereby.

The plaintiff's contention that he was evicted from the premises is not supported by the findings of the master. The fact that during an inspection of the theatre by the State inspector the lessor ordered the lessee from the premises and was the aggressor in a trouble in which the parties came to blows is not enough, because the lessee was not deprived of any substantial beneficial use of the premises, and there was no intent on the part of the lessor permanently to evict him. While a landlord must be presumed to intend the natural consequences of his conduct, all the circumstances must be taken into account in determining whether there has been an actual expulsion of the tenant with the intent and effect of depriving him of the enjoyment of the demised premises or some substantial part of it. *Skally* v. *Shute,* 132 Mass. 367. *McCall* v. *New York Life Ins. Co.* 201 Mass. 223. *Voss* v. *Sylvester,* 203 Mass. 233. The violent expulsion of the tenant from the premises may have been found under all the circumstances to disclose no intent to deprive the lessee of possession, but merely to have been for the purpose of preventing his conversation with the inspector.* It cannot be said that this inference was wholly unwarranted.

The contention cannot be sustained that the guaranty on which action was brought against Barnard Lumiansky was extinguished by a later guaranty for a larger amount signed by Barnard Lumiansky and one Mechaber. There is nothing to show that this may not have been a cumulative guaranty, leaving the earlier one in full force. It is not necessary to discuss in detail the other exceptions taken by the lessee. None of them can be supported, for the reason that they relate to matters about which the findings

---

* The master found "that the lessor's action in trying to keep the lessee out was caused by fear that the lessee would prejudice the inspector against reporting favorably on the application for the theatre license, and that his purpose was to keep the lessee away from the inspector rather than out of the building." He found that these acts of the lessor did not deprive the lessee of the beneficial use of the premises after the inspection, and that the lessor did not intend by his action permanently to evict the lessee.

of the master on questions of fact, the evidence not being reported, are final and cannot be disturbed.

The plaintiff raises a question of practice. The final decree provides that the suit in equity be dismissed with costs, and that in the common law action of the plaintiff against the defendant judgment shall be entered for the defendant with costs up to the date of an order consolidating the common law case with the suit in equity, and finding that in the action at law of the defendant against the plaintiff and Barnard Lumiansky a debt is established of $1,800 with interest, and further that Tessier, having discontinued his action against the present plaintiff, the defendant in that action, judgment for $1,000, which is the amount of his guaranty, is to be entered against the other defendant, Barnard Lumiansky. The plaintiff argues first that this decree is erroneous, on the ground that the two actions at law having been consolidated with the suit in equity, there was thereafter but one case pending, and all issues must be settled in a single decree. The interlocutory order, upon the interpretation of which the decision of this point depends, after describing the two actions at law and reciting that the order was entered by consent of the counsel in the equity suit and in the two actions at law, provided that the two actions at law "be consolidated with this proceeding and damages assessed herein, should any be found due; and that said two actions at law be heard with this suit at a session of the court without juries." No question arises as to the authority of the court to enter such an interlocutory order *in invitum* because this was made by consent of all parties. It was made by the Superior Court in the exercise of its powers as a court of general jurisdiction, and not by virtue of any statute. The practice respecting consolidation of actions is regulated by statute in the federal courts and in several State courts. Statutes have been enacted in this Commonwealth from time to time enlarging the rights of parties to join in a single proceeding, and extending the power of the court to fix costs to the end of preventing a multiplicity of actions. See R. L. c. 48, §§ 20–24, 29, 107; c. 173, §§ 1, 2; c. 189, § 32; c. 197, § 11; c. 203, §§ 8, 9. But there is no statute covering the general subject of consolidation of actions in this Commonwealth, and a practice has grown up adapted to the accomplishment of justice according to varying circumstances.

The phrase, "consolidation of cases," has been used in three different senses:

(1) Where several cases are pending upon different causes of action, involving in substance but one question, a court has inherent power to prevent the scandal to the administration of justice which would result from a trial of each case separately, and as one method of avoiding it may stay proceedings in all cases but one, and see whether the disposition of that one may not settle the others. Without tracing its history, this procedure is now firmly settled as a part of the common law. It appears often to be resorted to in England. *Amos* v. *Chadwick*, 4 Ch. D. 869; *S. C.* 9 Ch. D. 459. *McHenry* v. *Lewis*, 22 Ch. D. 397. *Bennett* v. *Lord Bury*, 5 C. P. D. 339. *Briggs* v. *Gaunt*, 4 Duer, 664. Tidd's Practice, (4th Am. ed.) 614, 615. This course has not been much followed in this Commonwealth, but there is no reason to doubt its soundness in law and its feasibility in cases to which it is applicable.

(2) Where several causes are pending between the same or different parties which grow out of a single transaction or which involve an inquiry into the same event in its general aspects, although the details of evidence may vary materially in fixing responsibility, the court may order them tried together. But they continue separate so far as concerns docket entries, verdicts, judgments and all aspects save only the one of joint trial. This is a frequent practice, and finds many illustrations in our decisions. *Burke* v. *Hodge*, 211 Mass. 156, and cases collected at 159. *Commonwealth* v. *Robinson*, 1 Gray, 555, 560. *Commonwealth* v. *Seeley*, 167 Mass. 163. It is to a consolidation of this kind that reference was made by Mr. Justice Gray in *Mutual Life Ins. Co.* v. *Hillmon*, 145 U. S. 285, in saying at p. 293, "But although the defendants might lawfully be compelled, at the discretion of the court, to try the cases together, the causes of action remained distinct, and required separate verdicts and judgments." The effect of a consolidation of this character was stated by Lurton, Circuit Judge, in *Toledo, St. Louis & Kansas City Railroad* v. *Continental Trust Co.* 36 C. C. A. 155, at p. 164, (95 Fed. Rep. 497, 506,) as follows: "Such consolidation is primarily but an expedient adopted for saving costs and delay. Each record is that of an independent suit, except in so far as the evidence in one is, by order of

the court, treated as evidence in both. The consolidation does not change the rules of equity pleading, nor the rights of the parties, as those rights must still turn on the pleadings, proofs, and proceedings in their respective suits. The parties in one suit do not thereby become parties in the other, and a decree in one is not a decree in the other, unless so directed." *Connecticut Mutual Life Ins. Co.* v. *Hillmon,* 188 U. S. 208, 212. *Benton* v. *Barnet,* 59 N. H. 249. *American Window Glass Co.* v. *Noe,* 86 C. C. A. 133; 158 Fed. Rep. 777. *Butler* v. *Evening Post Pub. Co.* 78 C. C. A. 511; 148 Fed. Rep. 821. *Burnham* v. *Dalling,* 1 C. E. Green, 310. *Mowry* v. *Davenport,* 6 Lea, 80, 91.

(3) When several cases are pending which might have been made the subject of a single suit or action, the court may enter an order which shall·fuse the several proceedings into a single one. The original actions lose their identity and become merged into the one in which alone the rights of the parties will be determined. Thereafter they are conducted not as separate and distinct actions or suits, but as one. In suits in equity, where there are several different parties but the same *res* is the subject of the litigation, or where there is such identity in the nature of the proceeding, the interests of the parties or the relief to be afforded as to require or render highly expedient a unification of divers proceedings, an order of consolidation in appropriate instances may bring all into one suit. *Smith* v. *Butler,* 176 Mass. 38, illustrates this kind of consolidation. See other instances arising generally under statutes: Brewer, Circuit Judge, in *Mercantile Trust Co.* v. *Missouri, Kansas & Texas Railway,* 41 Fed. Rep. 8; *Holthaus* v. *Nicholas,* 41 Md. 241, 265; *Pioneer Fuel Co.* v. *St. Peter Street Improvement Co.* 64 Minn. 386; *Midland Railway* v. *Island Coal Co.* 126 Ind. 384; *Wolters* v. *Rossi,* 126 Cal. 644; *Harris* v. *Wicks,* 28 Wis. 198, 202; *Lookout Lumber Co.* v. *Sanford,* 112 N. C. 655, 658; *Handley* v. *Sprinkle,* 31 Mont. 57.

It is manifest, from the tenor of the interlocutory order in this case, that consolidation of actions there was used in the second sense indicated above. It was a mere convenience that the three causes were tried together. The last sentence of the order describes the two actions at law as still pending, and does not direct a merger of all three into one. Moreover, appropriate remedy cannot be awarded in one suit alone. The defendant prevailing in

his action against the plaintiff can be afforded no affirmative relief in this suit.

It follows that the present defendant in his action against the present plaintiff and Barnard Lumiansky had a right to discontinue his action against the present plaintiff. A plaintiff in equity may not have his suit dismissed as of right on paying costs after hearing begun either before a master or the court or the doing of some other thing which would prejudice a defendant's rights or which in any way would be inequitable to him to have go for naught. *Kyle* v. *Reynolds,* 211 Mass. 110, and cases cited. *Worcester* v. *Lakeside Manuf. Co.* 174 Mass. 299. But it is settled that in an action at law a plaintiff may discontinue or become nonsuit after a hearing before an auditor, but before a trial on its merits. *Derick* v. *Taylor,* 171 Mass. 444. *Carpenter & Sons Co.* v. *New York, New Haven, & Hartford Railroad,* 184 Mass. 98. *Schenck* v. *Boston Elevated Railway,* 207 Mass. 437. *Snow* v. *Revere Rubber Co.* 211 Mass. 82, 86. The discontinuance by Tessier of his action against Maurice S. Lumiansky, after the hearing before the auditor or the prosecution of it against Barnard Lumiansky alone* falls under the latter rule. It is probable that, as matter of law, he could not maintain a joint action against the lessee and one who became guarantor under a separate instrument for the rent reserved in the lease. *Wallis* v. *Carpenter,* 13 Allen, 19. See *Roth* v. *Adams,* 185 Mass. 341; 20 Cyc. 1484. No error in this respect appears on the face of the decree.

*Decree affirmed with costs.*

*F. A. Milliken & A. W. Milliken,* for the plaintiff.
*E. Higginson,* for the defendant.

---

* In this action at law the two defendants filed separate answers, each alleging that he was joined improperly with the other, and both defendants made the same objection at the hearings before the master.