LAFORGE ET AL.

*vs.*

LeBLANC AND COMMERCIAL CASUALTY INSURANCE CO.

IN EQUITY.

Penobscot.     Opinion, February 3, 1941.

*John H. Needham*, for plaintiffs.
*William S. Cole*, for defendant.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, WORSTER, MURCHIE, JJ.

MANSER, J. On appeal by defendant insurance company. This is a bill brought under R. S., Chap. 60, Secs. 177-180, to reach and apply insurance money to payment of losses occasioned in an automobile accident by personal injury to the various plaintiffs, who had secured final judgments against the defendant LeBlanc aggregating $11,426.40. The insurance coverage was $10,000.00. The court below found for the plaintiffs and that each of them was entitled to .87507% of the judgments, which percentage aggregated $10,000.00, and decree was entered accordingly.

There were three separate bills by different groups of plaintiffs, of whom there were eight in all. Answers and replications were filed.

There were motions for consolidation by the plaintiffs in the three separate suits and an interlocutory order providing therefor. No objection to this course of procedure appears to have been made below and none is argued here. Inasmuch as there is no statute in this jurisdiction having general application to consolidation of causes in equity and no judicial ruling thereon by this court, and further as the method of procedure is squarely before the court in the present case, it is deemed advisable to give it consideration. In the earlier chancery practice there appears to have been some conflict of opinion and some divergence of practice. As said in *Burnham* v. *Dalling*, 16 N. J. Eq., 310 (1863), the earlier books of equity practice are silent on the subject. In Daniell's Chancery Pl. & Pr., 5th ed., Vol. 1, p. 797, there appears in the text the following:

> "Neither in the Court of Chancery nor in the Court of Exchequer has the practice prevailed of compelling the plaintiff to consolidate his different suits against several defendants."

The annotation to this text shows that in some of the early English

chancery cases, the practice of consolidating causes was recognized at one time, but afterwards disapproved.

The annotation to *Logan* v. *Mechanics' Bank*, 58 Am. Dec. 512 (1853) also speaks of the former practice, and then says:

"This rule has, however, been changed, and instances of the consolidation of suits in equity are numerous, and it has been held that the rules for consolidation are alike in law and equity; *Beach* v. *Woodyard*, 5 W. Va., 231; *Wyatt* v. *Thompson*, 10 Id., 645. Federal courts also may order consolidation of actions: Desty's Federal Procedure, sec. 921."

The federal statutes relating to the judiciary have the following provision:

"Sec. 921. When causes of a like nature or relative to the same question are pending before a court of the United States, or of any Territory, the court may make such orders and rules concerning proceedings therein as may be conformable to the usages of courts for avoiding unnecessary costs or delay in the administration of justice, and may consolidate said causes when it appears reasonable to do so."

In the Century Digest under the title Action, In chancery, Sec. 625, it is stated the rule as now generally adopted in most jurisdictions is that,

"A court of equity has inherent power to order a consolidation of causes in its discretion."

Cited in support are *Burnham* v. *Dalling*, 16 N. J. Eq., 310; *Woodburn* v. *Woodburn*, 123 Ill., 608; 14 N. E., 58, 16 N. E., 209; *Patterson* v. *Eakin*, 87 Va., 49, 12 S. E., 144.

There is an informative discussion by Rugg, C. J., in *Lumiansky* v. *Tessier*, 213 Mass., 182, 99 N. E., 1051, 1054, as to the consolidation of causes, both at law and in equity. Concerning the latter, the opinion says:

"In suits in equity, where there are several different parties but the same *res* is the subject of the litigation, or where there is such identity in the nature of the proceeding, the interests of

the parties or the relief to be afforded as to require or render highly expedient a unification of divers proceedings, an order of consolidation in appropriate instances may bring all into one suit."

The only statutory provisions in Maine relating to consolidation of causes, have to do with mechanics' liens, R. S., Chap. 105, Secs. 35 and 42. That legislative authority in such cases may have been deemed advisable arises from the fact that these provisions authorize the consolidation of two or more proceedings, either at law or in equity, pending at the same time in whatever court or courts, to enforce liens on the same building. That the power is inherent in the court itself, without legislative sanction, in the ordinary equity procedure, is laid down in 1 C. J. S., Actions, Sec. 110:

"A consolidation in equity is therefore ordinarily proper wherever the subject matter involved and relief demanded in the different suits make it expedient for the court, by hearing them together, properly to determine all of the issues involved and adequately adjudicate the rights of the different parties."

See also I Am. Jur., Actions, Sec. 92.

Undoubtedly there has existed in this state some uncertainty with respect to equity procedure as to consolidation of causes. This may have arisen in part from the fact that, as to actions at law, our practice has been limited to permitting or ordering several cases relating to the same subject matter to be tried together. *Field* v. *Lang*, 89 Me., 454, 36 A., 984. It may be noted, however, that in equity, consolidation has been recognized by the court, as appears from *Cushman Co.* v, *Mackesy*, 135 Me., 294, 195 A., 365.

The court adopts as a proper exercise of discretion by the presiding justice, the rule as quoted above from *Lumiansky* v. *Tessier*, supra.

Considering now the case upon its merits: The bills all alleged that, while defendant LeBlanc was operating his car on June 26, 1938, a collision occurred with a car operated by James R. Ballard, one of the plaintiffs, as a result of which the plaintiffs sustained personal injuries; that the plaintiffs brought separate actions against LeBlanc, and recovered judgments thereon; that on May

4, 1938, the defendant insurance company issued to LeBlanc its automobile liability insurance policy; that the policy was in full force and effect on the date of the accident; that the insurance company had seasonable notice of the accident and of the injuries and damages sustained. Prayers in the bills were that the plaintiffs be found entitled to the insurance money to be applied to their respective judgments and that the insurance company be ordered to pay them the same.

The appellant insurance company denied that the policy was in full force and effect, and also set up as substantive defense that

"the defendant LeBlanc had no insurable interest in the automobile,

"that no premium was ever paid for the policy,

"that on June 17, 1938 (nine days before the accident LeBlanc voluntarily surrendered the policy to the Company's agent for flat cancellation as of the date of issue and it was so cancelled, that LeBlanc, having been adjudicated a bankrupt (June 7, 1938) subsequently undertook to assume liability to assist the plaintiffs to obtain their judgments and that there is fraud and collusion between the judgment creditors and the defendant LeBlanc."

The statute R. S., Chap. 60, Sec. 177, makes the liability of an insurer absolute except under the conditions set forth in Sec. 180. Fraud and collusion constitute a statute designated defense. The statute provides and it is, of course, clear that to establish liability there must be a policy in full force and effect.

The issues, therefore, are narrowed to the defenses outlined above. The presiding justice found as to fraud and collusion that "the case is absolutely barren of any evidence of this kind."

The averment that LeBlanc, "having been adjudicated a bankrupt, subsequently undertook to assume liability to assist the plaintiffs to obtain their judgments" appears ambiguous, but it apparently means that LeBlanc virtually acknowledged liability for the accident and interposed no real defense to the actions at law. As there is no relation of trust between the assured and the insurer, the general rule obtains that he who asserts fraud must prove it by

clear and convincing evidence. *Strout* v. *Lewis*, 104 Me., 65, 71 A., 137; *Liberty* v. *Haines, Adm'r*, 103 Me., 182, 68 A., 738. The record shows and the company admits that prompt notice of the accident was given, that the summonses served on LeBlanc in the actions at law were promptly turned over to the company; that the company denied any responsibility under the policy, but offered to defend, provided it was without prejudice to its claim of non-liability. The company did not defend and the record is silent as to whether there were actual trials or how the damages were assessed. No complaint is made as to the amount of the awards.

The intimation that because LeBlanc was adjudicated a bankrupt three weeks before the accident, he was therefore actuated by a desire to avoid personal loss and so was motivated to assist the plaintiff, lacks convincing force. Regardless of a man's financial standing, he may be expected to rely upon his insurance coverage to save himself from such personal loss.

It does not appear, nor is it claimed that the adjudication in bankruptcy *ipso facto* worked a surrender or forfeiture of the policy. Under "Conditions," paragraph F, in the policy, it is provided:

"if, however, the named Insured shall die or be adjudged bankrupt or insolvent within the policy period, this policy, unless canceled, shall if written notice be given to the Company within thirty days after the date of such death or adjudication, cover (1) the named Insured's legal representative as the named Insured, and (2) subject otherwise to the provisions of Paragraph III, any person having proper temporary custody of the automobile, as an Insured, until the appointment and qualification of such legal representative, but in no event for a period of more than thirty days after the date of such death or adjudication."

Paragraph III relates to the persons who may be considered as Insured and has no application to the issue here.

LeBlanc was adjudicated a bankrupt June 7, 1938. The company received written notice thereof June 11, 1938. The accident happened June 26, 1938. The first meeting of creditors was set for June 23, 1938, but it does not appear from the record whether a

trustee was then appointed, or that any demand had been made upon LeBlanc to surrender possession of the automobile. By stipulation it is shown that the car was listed as an asset in the bankruptcy schedules and valued at $400.00 and that a financing corporation was listed as a secured creditor by conditional sale thereof, for a balance of $380.00.

LeBlanc testified that he was in possession and control of the car and the record does not negate the claim. The accident happened before the expiration of the thirty days mentioned in paragraph F of the policy, and the court below was apparently justified in finding that LeBlanc was a "person having proper temporary custody of the automobile, as an Insured."

Another contract provision is, in effect, that the policy remains in force under the conditions stated, "unless canceled" and the company claims that on June 17, 1938, the policy "was voluntarily surrendered for flat cancellation as of the date of issue and it was so cancelled."

The presiding justice was justified in his finding that LeBlanc "did not voluntarily surrender the policy for the purpose of cancellation but upon the other hand negotiated concerning the continuing of it, and was later notified by the insurance company, in writing, that he could keep the policy."

An unsigned letter from the general agent, dated June 11, 1938, referred to the bankruptcy notice just received, demanded that LeBlanc bring in policies on two trucks owned by him and also the policy in question, which he announced he intended to cancel as of date of issue.

While the policy contained no authority for such arbitrary cancellation, it appears that LeBlanc surrendered the truck policies, but negotiated for a continuance of the one in question, and on June 24, 1938, the general agent wrote LeBlanc a letter, saying, "It is quite agreeable to me that you should keep the policy on your own car dated May 4. Please let me know if I can expect a check for the full balance of $23.80 before July 4, or if you prefer to pay $7.13 down and make five monthly payments of $3.75 each." On June 27, 1938, the agent accepted $7.13 and gave receipt "*continuing in force* Policy 15799 from date hereof on account." There certainly appears to be no surrender or cancellation by agreement, and no waiver of the

policy provision, "This policy may be canceled by the Company by mailing written notice to the named Insured at the address shown in this policy, stating when not less than five days thereafter such cancellation shall be effective." No such notice was actually given.

A reason asserted for the claim that LeBlanc had no insurable interest in the car appears from a bill of sale dated January 3, 1936, but not recorded until October 19, 1937, from Adolphe E. LeBlanc, to whom the policy was issued, of certain motor vehicles, including the car in question, and certain store equipment, in which his son, Wilfred LeBlanc, is named as vendee. Defense claims this constituted a transfer of title. The car, however, was not purchased by Adolphe LeBlanc until August 26, 1937.

LeBlanc's explanation is: That he had been in the grocery business several years, times got pretty hard and he had the bill of sale drawn up, but did not feel like having it recorded until he had to. Conditions went from bad to worse and in October, 1937, he had it recorded, thinking that creditors might not be so apt to close him up. He received no consideration, never delivered either the bill of sale or the chattels to Wilfred, and continued in possession and control himself. He listed all the articles in his bankruptcy schedule as his own assets. The car was purchased by him, he always had possession, paid the excise taxes and had it registered in his own name.

Though his formulated intention to delay or hinder his creditors was not commendable, it was futile, and the court below was justified in finding that he never parted with title.

There is also interjected in defense that the car was financed by a loaning agency without the knowledge of the insurer. It is not claimed that this was in violation of the terms of the policy, but that LeBlanc had no title to the car and so had no insurable interest. This does not follow. He had a property right, coupled with possession, control and right to use. He could protect himself from liability for accidents occurring during such use.

Again, the claim that the premium being unpaid, the policy was not in force, is of no avail. It is clear from the agent's letter of June 11, 1938, that the policy was issued on credit.

Exception was taken to the exclusion of a letter written to LeBlanc by counsel for the company on December 8, 1938, long after the accident and after suits had been brought. It was clearly a self-

serving document, reciting the position taken by the company, and alleged conversations with LeBlanc.

The findings of the presiding justice appear to be fully justified and his rulings of law sound. There is no merit in the appeal.

The entry will be

*Appeal dismissed.*
*Decree below affirmed.*