WARREN T. DAVIS *vs.* P. ALBERT CRISHAM & another.

Essex.   November 6, 1912. — November 26, 1912.

Present: RUGG, C. J., HAMMOND, BRALEY, SHELDON, & DeCOURCY, JJ.

*Negligence,* Toward licensee, *Res ipsa loquitur.  Mail Clerk.*

The owner of a horse and wagon, who has a contract with a railroad corporation to carry the mail between the railroad station and the post office in a town, in transporting in the wagon a railway mail clerk in the employ of the United States, whose duty it is to keep the mail in his custody until it is delivered at the post office, owes him at the most no greater duty in regard to the wagon than to exercise reasonable care to provide one that is safe.

The fact, that the irons which held in place the seat of an open wagon broke when the horse attached to the wagon started suddenly and that a person sitting on the seat fell backward into the body of the wagon, is not evidence of negligence on the part of the owner of the horse and wagon in failing to provide a safe wagon for the transportation of the person on the seat.

TORT, by a railway mail clerk in the employ of the United States, for personal injuries sustained on November 29, 1909, when the plaintiff was thrown backward in a wagon of the defendants near the station of the Boston and Maine Railroad at Amesbury as described in the opinion, the declaration alleging that the defendants owed a duty to the plaintiff to provide a suitable and safe equipment or vehicle to carry the plaintiff and the mail, but that the defendants furnished an unsafe, improper and insecure vehicle or wagon for that purpose and an unbroken and vicious horse to draw the vehicle.   Writ in the Second District Court of Essex dated January 13, 1910.

On appeal to the Superior Court the case was tried before *Raymond,* J.   The facts which appeared in evidence are stated in the opinion.   The judge ordered a verdict for the defendants; and the plaintiff alleged exceptions.

The case was submitted on briefs.

*C. I. Pettingell,* for the plaintiff.

*A. W. Reddy,* for the defendants.

DeCOURCY, J.   The defendants had an oral contract with the Boston and Maine Railroad to carry the mail between the rail-

road station and the post office in Amesbury, and when the train arrived at seventeen minutes after nine on the morning of the accident, their employee was at the station with an ordinary express or delivery wagon. As somewhat vaguely described in the exceptions, "the seat had . . . two irons down each side and . . . two iron straps hitched on the inside of the wagon so that it would keep the seat from slipping on the body of the wagon." The plaintiff was a railway mail clerk in the employ of the United States government; and there was evidence that by the rules of the post office department he was required to keep the mail that was carried on this particular train in his personal custody until it was delivered at the post office. The driver was to return to the station with mail for the train that would leave Amesbury at thirty-three minutes after nine; and both the plaintiff and the driver testified that this work necessarily was done in a hurried manner, and that it was usual for the driver "to grab the mail and jerk it on to the wagon, . . . grab the reins and start off . . . pell-mell up the street."

On the day of the accident, after the mail was placed in the wagon, the plaintiff sat upon the seat, the driver unhitched the weight from the horse, took the reins and got wholly or partly on the wagon. The horse then suddenly started and the plaintiff and the seat went backward, the plaintiff falling on his back in the body of the wagon. An examination after the accident revealed fresh, clean breaks in two of the small iron straps that held the seat, admittedly due to the accident.

The plaintiff seeks to hold the defendants responsible for his injury solely on the ground that they negligently furnished an unsafe, improper and insecure wagon to carry him. The allegation that the horse was unbroken and vicious has been waived; and neither in the pleadings nor in the brief is any complaint made with reference to the conduct of the driver. The brief reference to the contract in the exceptions discloses no obligation on the part of the defendants to convey the plaintiff, unless it be implied from their agreement "to carry the mail" to the post office. They were not common carriers, and upon the evidence they owed the plaintiff at most no higher duty with regard to the wagon than that of exercising reasonable care to provide one that was safe. It is not contended by the plaintiff that the wagon was in fact

unsafe or improper except as to the irons that held the seat and which broke when the strain of a sudden start was put upon them. But the fastening was one in common use and suitable for the purpose that it served. It does not appear that the most careful inspection would have disclosed any defect or weakness in it. The plaintiff cannot invoke the doctrine of *res ipsa loquitur* to supply a presumption of culpability, for not only does he fail to exclude the operation of causes other than the negligence of the defendants, but the most probable inference to be drawn from the facts is that when the horse started the plaintiff fell backward and pulled the seat with him, — and indeed the driver so testified. The evidence would not warrant the jury in finding that the accident was caused by negligence on the part of the defendants. *Childs* v. *American Express Co.* 197 Mass. 337. *Trim* v. *Fore River Ship Building Co.* 211 Mass. 593.

*Exceptions overruled.*