FRANCES ROCRAY & another vs. GEORGE DUBY.

Berkshire.    September 18, 1951. — November 27, 1951.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Negligence*, Contractor, Contributory.

Evidence of the circumstances in which, after a defendant hired to install
     siding on the plaintiff's house had brought pump jacks and other
     equipment to the premises and had worked there for several days, the
     plaintiff tripped and fell in the dark over the handle of a pump jack
     protruding over a walk leading to her garbage pail, together with
     evidence that after the accident the defendant said that it "was really
     his fault, that he should never have left the jack in that position,"
     warranted a finding of negligence on the defendant's part and did not
     require a ruling that the plaintiff was guilty of contributory negligence.

TORT.    Writ in the Superior Court dated September 17,
1948.

The action was tried before *Broadhurst, J.*

*F. M. Myers, Jr.,* (*F. M. Myers* with him,) for the defendant.

*J. N. Alberti,* (*M. Freedman* with him,) for the plaintiffs.

SPALDING, J.    In this action of tort verdicts were returned for the plaintiffs.[1]    The case comes here on the defendant's exception to the denial of his motion for a directed verdict.    The female plaintiff will hereinafter be referred to as the plaintiff.

The following is a summary of the evidence most favorable to the plaintiffs:  The plaintiffs, husband and wife, entered into a contract with the defendant to install siding on a house owned and lived in by them.  The defendant commenced work under the contract on October 16, 1947.  To perform this work he brought to the plaintiffs' premises

---

[1] The declaration contained two counts.  In the first count the female
plaintiff sought compensation for personal injuries and in the second count
her husband sought consequential damages.

certain equipment consisting of planks, a ladder, and four
pump jacks. The pump jacks were attached to four by
four planks about twenty feet in length. This equipment
was placed on the edge of a slope at the rear or easterly side
of the house at a point south of a dirt walk which ran from
the rear of the house to a garbage pail. "The position and
amount of equipment . . . [were] being changed daily by
the defendant." The defendant worked on the premises
for the three day period commencing on October 16 and end-
ing at 6 P.M. on October 18, which was a Saturday. "During
the time the defendant was carrying on said work, the
plaintiffs knew where the articles of equipment . . . were
being left, but did not know the manner in which same was
deposited, and made no complaint to the defendant as to
where said articles were being left." During October 16,
17, and 18 the defendant's equipment was "entirely off the
walk."

On Sunday, October 19, about 7 P.M. the plaintiff went
out of the house for the purpose of depositing some garbage
in the garbage pail. In doing so she descended some steps
on the rear porch which was "lighted only by a small elec-
tric light." "It was dark to the rear of the steps and along
. . . [the] dirt walk leading to the garbage pail." The
plaintiff reached the dirt walk and, after proceeding two or
three steps, tripped over the handle of a pump jack and
fell. The handle of the jack was about two and one half
feet long and protruded over the dirt walk upon which the
plaintiff was walking. It did not appear that the defendant
had been on the plaintiffs' premises between the time when
he had stopped work on October 18 and the time of the
accident.

After the accident, the defendant said to the plaintiffs
that "It was really his fault, that he should never have left
the jack in that position." "He said he was sorry, that he
didn't want to put his jack over the bank because he was
afraid it might be broken, so he left it that way, but he said
he never should have done it." It appeared that "in the
level space [beyond the garbage pail] there was plenty of

room for planks . . . and all the other equipment which
. . . [the plaintiffs] had seen there."

We are of opinion that on the foregoing evidence the
plaintiffs were entitled to go to the jury. The jury could
have found that the defendant ought to have foreseen that
occupants of the plaintiffs' household would use the dirt
walk and that a pump jack left so that its handle protruded
into the walk would constitute a source of danger. *O'Neil*
v. *National Oil Co.* 231 Mass. 20, 26.

It is true that the defendant left the premises at 6 P.M.
on the preceding day and that there is no direct evidence
that at that time the handle of the jack protruded into the
walk. It is of course possible, as the defendant argues, that
this condition could have been created by persons for whose
conduct the defendant was not responsible. But the plain-
tiffs were required only to show that there was a greater
likelihood that the defendant's negligence caused their in-
juries; they were not obliged to exclude every other
possibility. *Bigwood* v. *Boston & Northern Street Railway*,
209 Mass. 345, 348. *Rocha* v. *Alber*, 302 Mass. 155, 157–158.
In view of the comparatively short period (twenty-five
hours) that elapsed between the time that the defendant
left the premises and the accident and his admissions that
it was his fault and that "he should never have left the
jack in that position," the jury would have been warranted
in finding that he was responsible for its location at the
time of the accident.

It cannot be said as matter of law that the plaintiff was
contributorily negligent.

*Exceptions overruled.*