RICHARD J. BRADY, JUNIOR, *vs.* THE GREAT ATLANTIC & PACIFIC TEA COMPANY.

Suffolk.   October 8, 1957. — November 13, 1957.

Present: WILKINS, C.J., WILLIAMS, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Negligence,* Store, Res ipsa loquitur, "Baby seat."

Evidence of the circumstances in which a baby of a customer in a store fell from a shopping carriage, furnished by its proprietor for the convenience of customers, after having been securely fastened in the "baby seat" of the carriage by a strap attached thereto warranted findings that the baby's fall was due to breaking of the strap at a place where it was so weakened as to be inadequate to hold the baby

in place and that the weakness in the strap would have been discovered and remedied if the proprietor had exercised due care in inspecting equipment, and warranted an inference of negligence on his part toward the baby under the doctrine of res ipsa loquitur.

TORT. Writ in the Superior Court dated November 5, 1953.

The action was tried before *Dowd,* J.

*Charles W. O'Brien,* for the defendant.

*Francis X. Carroll,* for the plaintiff.

WHITTEMORE, J. There was a verdict for the plaintiff in this action of tort for injuries sustained on June 13, 1952, when the plaintiff, then nine months old, fell from a shopping carriage in the store of the defendant at 451 Washington Street, in the Dorchester district of Boston. The defendant excepted to the denial of its motions to set aside the verdict and for a new trial and to a portion of the charge. There was no error.

Taken most favorably for the plaintiff the evidence showed the following facts: The plaintiff's mother, a customer, placed the plaintiff in the baby seat of a metal shopping carriage furnished by the defendant for the convenience of customers. She strapped him in by buckling across his stomach the two pieces of canvas or duck cloth strap attached to the carriage for the purpose, as the defendant admitted, of "holding . . . in place" a child who might ride therein. There was no space left between the belt and the plaintiff's stomach; it was tight. It felt secure. She "did not test it in any way [but] . . . she had both pieces of the strap in her hands . . . [and] pulled on them to some extent to make sure they were secure when she had the buckle buckled." The only thing she then noticed about the belt was that it was dirty. While the mother was picking up some merchandise the plaintiff was "sitting upright perfectly quiet with his back against the back of the baby seat, . . . he was not holding onto anything." Thereafter the mother stood at the "empties" counter waiting for a refund with the carriage a couple of feet in back of her. "[S]he had been standing there just a couple of minutes,

when she heard a thud and a scream." Upon turning she saw the plaintiff on the floor at the left side of the carriage, and the strap broken away from one side of the carriage and "frayed right at the point where it had broken." "[W]hen she said the strap was frayed, she meant it was broken." The strap resembled an old canvas belt. The carriage was a basket on four wheels with a place for purchases and with the baby seat in front so that the baby faced the mother as she pushed the carriage. The paint on the shopping basket was chipped and old looking, the basket was rusty looking, and the paint on the red baby seat was very badly chipped. "[T]he carriage did not tip over," and after the accident the seat was still secured to the basket.

The portion of the charge to which the defendant excepted is as follows: "There is also a doctrine in law known as 'res ipsa loquitur.' Those are three Latin words, and they mean, 'The thing itself speaks,' or, 'The thing speaks for itself,' and the theory of that is that from the nature of the accident itself liability may be found if the instrumentality is entirely within control of the defendant, and the accident wouldn't have happened unless from the negligence of the defendant, or it would be more likely to happen from the negligence of the defendant than any other cause. You may have to reach that doctrine in this case because the evidence here is rather light on the question of just what did happen at the time this accident occurred."

There is no doubt that the duty of due care extends to the small children of the customer. *Grogan* v. *O'Keeffe's Inc.* 267 Mass. 189, 192.

This is one of the cases in which "the inference to be drawn is a double one, that the accident was caused in a particular manner, and that the defendant's conduct with reference to that cause was negligent." Prosser on Torts (2d ed.) page 204. Such double inference may be drawn when the facts warrant it. *Ibid.* *Glaser* v. *Schroeder,* 269 Mass. 337, 339. *Bachand* v. *Vidal,* 328 Mass. 97, 99. *Peterson* v. *Minnesota Power & Light Co.* 207 Minn. 387. *Black* v. *Child's Co. of Providence,* 73 R. I. 516, 519.

The improbability that something other than the breaking of the strap at a weak point caused the fall is such as to remove the cause from the realm of pure conjecture. See *Rocray* v. *Duby*, 328 Mass. 110, 112; *Bennett* v. *Cohen*, 310 Mass. 714, 715. In all the circumstances we think the jury could conclude that the plaintiff would not have fallen if the strap had not been so weakened at the point of its attachment to the carriage that it was inadequate for its intended function.

It is of course within the limits of possibility that in the interval during which the mother was not observing the baby a customer or other stranger may have fooled with the strap, or taken hold of the baby, or come in contact with the carriage. But in common experience gratuitous intentional meddling with another's baby does not occur to the extent that would break a strap which was strong enough to serve its purpose. That purpose, it could be found, was to hold the baby in its carriage notwithstanding its unobserved but expectable wigglings at times when the mother's attention might be diverted by her reasonable preoccupation with her business in the store. If the strap was so weak that the light tug of a playful child or other intermeddler could have broken it its insufficiency for its purpose was a cause of the fall. If the break came from collision of person or object with the carriage it is highly unlikely that the carriage would not have tipped over. It is also unlikely that anything less than an extraordinarily forceful collision, with concomitant noise and confusion, would have broken a strap which was in good condition. It is, we think, very unlikely that a baby could, as the defendant suggests, twist out from under the strap without breaking it, but nevertheless break it in falling, and do so without tipping the carriage. Also we agree with the plaintiff that if the design of the carriage was such that there was much likelihood that a nine months old baby could slip out from under the securely fastened strap, this would be some evidence of negligence in supplying such equipment.

The mother's testimony that she had pulled on both

pieces of the strap does not make it unlikely that the strap was weak and worn where attached to the basket. It may describe only a pull against the buckle in view of the further statement that it was "to make sure they were secure when she had the buckle buckled." In any event the testimony that it was a pull "to some extent" does not describe significantly the force exerted.

*Rankin* v. *Brockton Public Market, Inc.* 257 Mass. 6, 9–11, relied on by the defendant, does not control this case. There it was deemed purely conjectural whether the fall of the plaintiff, a woman customer, was caused by, or itself caused, the fall of a bottle from a moving belt used to convey merchandise, or whether some cause unrelated to the defendant's negligence may have caused the bottle to fall. The adequacy of the installation to provide against the fall of merchandise from the belt, caused by accidents which might reasonably be anticipated, was not discussed. No issue was presented of the failure of existing equipment designed to prevent an accident such as in fact occurred. Compare also *Davis* v. *Crisham*, 213 Mass. 151; *Walker* v. *Benz Kid Co.* 279 Mass. 533; *Howard* v. *Lowell Coca-Cola Bottling Co.* 322 Mass. 456; *Fucci* v. *W. W. Welch, Inc.* 329 Mass. 467; *Ginsberg* v. *Metropolitan Transit Authority*, 333 Mass. 514.

We think that it was open to the jury to reach the second conclusion that the weakness in the strap was due to wear at the point of attachment to the carriage and that this would have been discovered by the defendant if due care had been exercised in inspecting equipment. *Keenan* v. *E. M. Loew's, Inc.* 302 Mass. 309, 312. *Bell* v. *Dorchester Theatre Co.* 314 Mass. 536. The appearance of the belt and strap support the conclusion of weakness from wear. Common experience says that signs of weakness from wear, such as thinness, lack of firmness, and broken threads, would be visible upon examination. "The duty of the defendant was to use reasonable care to maintain the seat in a reasonably safe condition for the use . . . [and] to discover any concealed defect." *Bell* v. *Dorchester Theatre Co., supra*, 537. Compare *Gauld* v. *John Hancock Mutual Life Ins. Co.* 329

Mass. 724, 728, where it was held that there was insufficient evidence that the defect should have been discovered in the exercise of due care.

For reasons stated above the conclusion that due inspection would have shown wear was open notwithstanding the evidence that the mother pulled on the strap.

The carriage was sufficiently in the control of the defendant to permit the latter's negligence to be inferred. See *Callahan* v. *New England Telephone & Telegraph Co.* 216 Mass. 334, *Couris* v. *Casco Amusement Corp.* 333 Mass. 740, and the other broken seat cases, *infra*. The extent of control is relevant in determining whether in the particular case negligence may reasonably be ascribed to the defendant rather than another. Prosser on Torts (2d ed.) page 206.

We think this case stands with the many cases in which an inference of negligence was held warranted. These include (broken seat cases) *Callahan* v. *New England Telephone & Telegraph Co.* 216 Mass. 334, *Keenan* v. *E. M. Loew's, Inc.* 302 Mass. 309, *Bell* v. *Dorchester Theatre Co.* 314 Mass. 536, *Matthews* v. *L & L Enterprises, Inc.* 314 Mass. 538, *Couris* v. *Casco Amusement Corp.* 333 Mass. 740; (other cases) *Doherty* v. *Booth,* 200 Mass. 522, *McDonough* v. *Boston Elevated Railway,* 208 Mass. 436, *Davies* v. *Boston Elevated Railway,* 220 Mass. 200, *Washburn* v. *R. F. Owens Co.* 252 Mass. 47, *Glaser* v. *Schroeder,* 269 Mass. 337, *Knych* v. *Trustees of New York, New Haven & Hartford Railroad,* 320 Mass. 339, *Beaulieu* v. *Lincoln Rides, Inc.* 328 Mass. 427, *DiRoberto* v. *Lagasse, ante,* 309.

*Exceptions overruled.*