PAUL H. ALTMAN & another *vs.* BARRON'S, INC.
(and a companion case[1]).

Middlesex.    May 2, 1961. — June 15, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, KIRK, & SPIEGEL, J.J.

*Negligence,* Store, Invited person, Contractor. *Practice, Civil,* Inter-
rogatories. *Evidence,* Interrogatories.

A boy about three years old, who was taken by his mother to the boys'
    department of a store to purchase clothing for him and was permitted
    by her to play near by while she examined some clothing, and who
    thereupon fell into a stair well in that part of the store and was in-
    jured, might properly be found to be a business invitee of the proprietor
    of the store. [46–47]
Evidence, that in the boys' department of a store there was a railing of
    two rails along the edge of the floor at the top of a stair well, with
    nearly three feet of space between the lower rail on the floor and the
    upper rail, that the railing and stair well were concealed by cases of
    merchandise and a rack of bathrobes placed in front of the railing, that
    immediately after a customer in that department had permitted her son,
    about three years old, to play while she examined clothing and had seen
    him at the rack of bathrobes, there was a "thud" and the boy was found
    lying on a landing part way down the stairs, warranted findings that he
    had fallen through the railing and that the proprietor of the store was
    negligent toward him by reason of the concealed drop into the stair well
    maintained without warning to customers. [47–48]
An answer to an interrogatory stating something of which the answering
    party had "been informed" was properly excluded when offered in evi-
    dence by the opposite party since the answering party's informant
    might not have been his agent, servant or attorney. [48]
Where it appeared that after a contractor had finished construction of a
    stairway in a store and a railing of two rails along the edge of the floor
    at the top of the stair well, with space between the lower rail on the
    floor and the upper rail, and had gone to another part of the store to
    do work there, employees of the proprietor of the store placed cases of
    merchandise and a rack of bathrobes in front of the railing, concealing
    it and the stair well, and that subsequently a boy about three years of
    age, who had been taken to the store by his mother, a customer, and
    permitted by her to play at the rack of bathrobes while she was exam-
    ining clothing, fell through the railing into the stair well and was in-

---

[1] The companion case is by the same plaintiffs against John W. Kellar.

jured, the contractor was not liable for the boy's injuries; a provision in the contract between the proprietor and the contractor obligating the contractor to insert a panel between the rails of the railing did not aid the boy.  [48–49]

Two ACTIONS OF TORT.  Writs in the Superior Court dated January 8, 1958, and August 18, 1958.

The actions were tried before *Taveira, J.*

*Newton A. Lane,* (*Bernard N. Borman* with him,) for the plaintiffs.

*Walter F. Henneberry,* (*John J. O'Brien* with him,) for the defendant Barron's, Inc.

*Daniel A. Lynch,* (*Paul F. Degnan* with him,) for the defendant Kellar.

SPIEGEL, J.  These are two actions of tort to recover damages for personal injuries sustained by the minor plaintiff, Paul H. Altman, and consequential damages by the plaintiff Arthur D. Altman, the father of the minor plaintiff.  One action is brought against the defendant corporation, Barron's, Inc., the operator of a store in Newton, hereinafter referred to as Barron's, and the other action against the defendant John W. Kellar, a contractor who was performing work in the store.  The actions were consolidated for trial.  *Lumiansky* v. *Tessier,* 213 Mass. 182, 188.  The cases come here on exceptions to the direction of verdicts for both defendants.

From the evidence most favorable to the plaintiffs the following facts appear:  Under date of May 21, 1957, Barron's entered into a written contract with Kellar for a new addition and alterations to the store operated by Barron's. The work was to consist of breaking through the rear wall of the store and constructing a new stairway to extend from the basement to the main floor of the store.  The new stairway was to run from the rear of the basement up a series of steps to a landing which was on the same level as, and permitted access to, the rear parking lot; from here it would take a left angle turn to a landing half way between the parking lot level and the main store; a series of steps was to run from the second landing up to the main floor.

A portion of the main floor area bordered on and overlooked the second landing and the series of steps running down to the second landing.

About two weeks before the accident the stairway had been completed, and two wooden railings were constructed at the edge of the rear of the main floor overlooking the new stairway and second landing. The top railing was three and one half feet above the floor. On the surface of the floor beneath the top railing another railing was constructed. The lower railing, which touched the floor, was three inches thick and a five-eighths inch strip was attached on top of it. The opening between the upper railing and the railing on the floor measured two feet eight and one half inches.

Nine or ten days before the accident, the carpentry work had been completed in the rear area, and Kellar's men were working in another section of the store. The contract between Barron's and Kellar called for the insertion of a glass panel between the two railings. The new door leading from the parking area to the new stairway had been locked for two weeks prior to the accident and the key was in the possession of the president of Barron's.

About a week before the accident Barron's employees had moved merchandise cases six to eight feet high against two sections of the upper railing and also placed cases about six feet high in front of the new stairway, but left an open space wide enough for a man to squeeze through between these cases. Some days before the accident, Barron's employees had placed a clothing rack with bathrobes on hangers right up against the third section of the railing. The rack containing bathrobes was eight feet high and the robes extended to about eight to three inches from the floor. The distance from the main floor behind the bathrobe rack to the place below where the minor plaintiff was found was about eight and one half feet. Barron's testified by answers to interrogatories that it was in control of the main floor but was not in control of the work performed there or the second landing.

On the morning of September 16, 1957, Mrs. Altman, the mother of the minor plaintiff, took her two boys, Murray aged five and one half years, and Paul, the minor plaintiff, who was two years ten months old and three feet tall, to the store for the purpose of buying shirts and slacks for them. They went to the "boys' department" to buy slacks for the older boy and arrived at a counter about five steps from the rack of bathrobes. While Mrs. Altman stood at this counter examining slacks with a salesman she permitted the minor plaintiff to play. She observed the minor plaintiff playing at the rack containing the bathrobes but was not aware that immediately behind the rack the floor dropped off into the stair well. Twenty or thirty seconds after Mrs. Altman saw the minor plaintiff playing in this area "she heard a thud" followed by crying a few seconds later. She went to the clothes rack and saw that "[t]here was no floor on the other side of the clothing rack." She then ran down the new stairway and found the minor plaintiff lying on the second landing.

The minor plaintiff comes in the category of a business invitee. *Holbrook* v. *Aldrich,* 168 Mass. 15, 16. See *Howlett* v. *Dorchester Trust Co.* 256 Mass. 544, 546; *Grogan* v. *O'Keeffe's Inc.* 267 Mass. 189, 193. See *Flynn* v. *Cities Serv. Ref. Co.* 306 Mass. 302, 304; *Valunas* v. *J. J. Newberry Co. Inc.* 336 Mass. 305, 306; *Brady* v. *Great Atl. & Pac. Tea Co.* 336 Mass. 386, 388. It was the duty of Barron's to use reasonable care to keep the premises in a reasonably safe condition for the use of business invitees according to their invitation, or at least warn them against any danger attendant upon this use which was known or should have been known to Barron's and was not known by the business invitees or obvious to any ordinarily intelligent person. *Kelley* v. *Goldberg,* 288 Mass. 79, 81. *Flynn* v. *Cities Serv. Ref. Co.* 306 Mass. 302, 303. *Underhill* v. *Shactman,* 337 Mass. 730, 734–735. *Del Sesto* v. *Condakes,* 341 Mass. 146, 147. Whether the invitation to the minor plaintiff extended to that part of the store where the accident occurred was a question of fact for the jury. *Coates* v. *First Natl.*

*Stores Inc.* 322 Mass. 563, 565. *Giacomuzzi* v. *Klein,* 324 Mass. 689, 691–692.

It was also a question of fact for the jury whether the invitation to the minor plaintiff included or anticipated that he might leave his mother and go near, under or behind the clothes rack containing bathrobes. The fact that the accident occurred in the "boys' department" may have some bearing on this issue. Cf. *Flynn* v. *Cities Serv. Ref. Co.* 306 Mass. 302, 304.

It was reasonable for Mrs. Altman to bring the minor plaintiff to the store when purchasing clothes for him. Even if it could be found that the conduct of the mother in regard to the safety of the child was negligent it could not be imputed to the minor plaintiff because of G. L. c. 231, § 85D. *Gill* v. *Jakstas,* 325 Mass. 309, 313.

Upon the evidence it was for the jury to say whether the drop behind the rack of bathrobes rendered the premises unsafe. *Howlett* v. *Dorchester Trust Co.* 256 Mass. 544, 547. *Grogan* v. *O'Keeffe's Inc.* 267 Mass. 189, 193. *Coates* v. *First Natl. Stores Inc.* 332 Mass. 563, 565. *Dickson* v. *Guaranty Bank & Trust Co.* 339 Mass. 673, 674–675. A jury would be warranted in finding that the condition was not obvious to a reasonably intelligent person since there was evidence that the railings bordering the stair well were concealed by merchandise cases and the rack of bathrobes, that no warning was given of the condition of the premises, and that the minor plaintiff's mother did not know of the existence of the stair well behind the rack of bathrobes. See *Giacomuzzi* v. *Klein,* 324 Mass. 689, 691.

The defendant Barron's argues that it need not maintain its premises in such condition as to be reasonably safe to customers crawling under the clothes racks. As was said above, the jury might reasonably find that the maintenance of a steep drop concealed by the rack of bathrobes was negligent. A defendant may be liable though unable to foresee the precise manner in which the accident happened. *Lord* v. *Lowell Inst. for Sav.* 304 Mass. 212, 215. *Ryder* v. *Robinson,* 329 Mass. 285, 287. This accident could have happened even to an adult in several different ways.

Barron's contends that there is no evidence upon which a jury could have found that the minor plaintiff fell through the opening behind the rack of bathrobes. There was evidence that twenty or thirty seconds after the minor plaintiff was seen playing near the rack of bathrobes a "thud" was heard and a short time thereafter the child was found lying on the second landing. The facts warrant an inference that he fell through the railing behind the rack of bathrobes. The short space of time involved makes other explanations improbable. See *Brady* v. *Great Atl. & Pac. Tea Co.* 336 Mass. 386, 388.

It was error for the trial judge to direct a verdict in favor of Barron's.

The plaintiffs excepted to the exclusion of an answer to an interrogatory of the plaintiffs. We discuss this briefly because the same issue may arise at a subsequent trial. The interrogatory was: "Please state as fully as possible how the alleged accident happened." The following answer was excluded: "I have been informed while left unattended by mother climbed under clothes rack and fell into stair well." The ruling of the trial judge was right. "While it is true that hearsay information acquired from a party's agents, servants, and attorneys may be embodied in answers to interrogatories . . . this answer may well have been based on the fact that the defendant was 'informed' by someone not included among his agents, servants, and attorneys." *Falzone* v. *Burgoyne,* 317 Mass. 493, 497–498.

A verdict was properly directed in favor of Kellar. There is no evidence from which the jury could infer or find that Kellar knew that Barron's had moved merchandise into the area where the accident occurred. The key to the door leading from the outside rear was in the possession of the president of Barron's and the door was locked for two weeks prior to the accident. There was no way that the contractor could realize that his conduct involved an unreasonable risk of harm to others. *Gagnon* v. *DiVittorio,* 310 Mass. 475, 477. *Lydon* v. *Warehouse 13, Inc.* 335 Mass. 729,

732. There is no evidence that Kellar had any control over the area in which the merchandise cases or clothes rack had been placed or that he participated in placing them in this area. The plaintiffs cannot rely on the contract provision which obligated Kellar to place a glass panel between the railings since this obligation ran only to Barron's and his failure to do so was not negligent as to the plaintiffs. See *United Elec. Light Co.* v. *Deliso Constr. Co. Inc.* 315 Mass. 313.

The exception to the direction of a verdict for Kellar is overruled. The exception to the direction of a verdict for Barron's is sustained.

*So ordered.*