MICHAEL T. LIPINSKI vs.
LYNN REDEVELOPMENT AUTHORITY.

Essex. February 7, 1969. — April 4, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & REARDON, JJ.

*Evidence*, Of value; Judicial discretion; Opinion: expert. *Eminent
Domain*, Damages. *Damages*, Eminent domain. *Error*, Whether error
harmful.

At the trial of a proceeding for assessment of damages for a taking by
eminent domain of property not used for a special or unusual purpose,
there was no abuse of discretion in striking the opinion of an expert
for the petitioner as to the fair market value of such property when
the judge learned that the opinion was based solely on the reproduction
cost theory. [552]

At the trial of a proceeding for assessment of damages for a taking of
property by eminent domain, it was within the judge's discretion to
exclude as too broad a question asking the opinion of an expert for the
petitioner as to "the effect of an impending public taking with respect
to the market value of real estate in the area of the taking." [552–553]

At the trial of a petition for the assessment of damages for a taking by
eminent domain of property which decreased in value because of the
impending taking, where experts for the respondent gave opinions as
to the value of the property when taken based partly on its rental
value, there was error prejudicial to the petitioner in the exclusion on
cross-examination of such experts of questions designed to ascertain
if their opinions were erroneously based in part on rental value as
already affected by the prospective taking. [554]

PETITION filed in the Superior Court on January 29, 1965.

The case was tried before *Thompson*, J.

*F. Dale Vincent* for the petitioner.

*George O. Gregson* for the respondent.

SPALDING, J. This is a petition under G. L. c. 79 for the
assessment of damages incident to a taking by the Lynn Re-
development Authority (Authority). The taking, the
legality of which is not challenged, became effective May 1,
1964. The jury returned a verdict for the petitioner in the
amount of $47,500. The case comes here on the petitioner's

exceptions to several rulings on evidence and to the refusal
of certain requests for instructions.

The premises taken consisted of a parcel of land (zoned
for business) on Summer Street, Lynn, on which there was
a three story brick building. The building, constructed in
1888, was purchased by the petitioner in 1951. There were
two retail stores and a hallway on the first floor; a stairway
led to the second and third floors and the mezzanine. The
petitioner, an architect, occupied the second floor for his
offices and drafting rooms. The third floor and the mezza-
nine had, until 1959, been used as a meeting place by a fra-
ternal organization. Thereafter a new dance floor was in-
stalled and that portion of the building was available for
rental by the day or evening for social occasions. Between
1960 and the time of the taking the third floor had been
rented no more than three times. The petitioner testi-
fied that the fair market value of the property was $93,500,
and that "there were no properties similar to his own in
Lynn."

1. The petitioner's expert witness, one Mason, testified
that in his opinion the fair market value of the property
was $93,000. In response to questions by the court, the
witness testified that in making his appraisal he "used one
approach," namely, the reproduction cost of the building,
less depreciation and obsolescence. The judge thereupon
ordered the witness's testimony on valuation struck, subject
to the petitioner's exception.[1]

"Depreciated reproduction cost, at best, though admis-
sible in the judge's discretion (*Levenson* v. *Boston Elevated
Ry.* 191 Mass. 75, 78), has only a very inconclusive relation
to fair market value." *Bachelder Truck Sales, Inc.* v. *Com-
monwealth,* 350 Mass. 270, 273. As to properties not fre-
quently bought or sold which are used for a special or un-
usual purpose, we have recognized that a valuation based

---

[1] After this ruling the witness was examined further in the absence of the
jury, and he testified that there was insufficient data to enable him to use
either the comparative sale or the capitalization of income approach. The
judge then reaffirmed his ruling, subject to the petitioner's exception, that
the depreciated reproduction cost method of valuation could not be used.

on reproduction cost less depreciation may have greater relevance than in ordinary cases. See *Girl Scout Council, Inc.* v. *Massachusetts Turnpike Authy.* 335 Mass. 189, 195; *Commonwealth* v. *Massachusetts Turnpike Authy.* 352 Mass. 143, 148. The judge, nevertheless, could have concluded that the property here was not of that sort. His ruling that the evidence be struck reveals no abuse of discretion. *James Millar Co.* v. *Commonwealth,* 251 Mass. 457, 464.

The petitioner argues that since the witness testified on direct examination to the fair market value of the property there was no attempt, unlike the situation in *Commonwealth* v. *Massachusetts Turnpike Authy.* 352 Mass. 143, to introduce a valuation based on reproduction cost less depreciation and obsolescence plus land value. We disagree. As stated in *Boston Gas Co.* v. *Assessors of Boston,* 334 Mass. 549, 579, the "rule is that where it is demonstrated during the testimony of an expert that his opinion rests wholly upon reasons which are legally incompetent, there is no right to have his opinion considered as evidence." In *Maher* v. *Commonwealth,* 291 Mass. 343, 348–349, it was developed on cross-examination that the owner's valuation of his property was based in part on its sentimental value to him. A motion to strike the evidence was denied. It was held that the denial of the motion was error because the owner's opinion rested in part upon an erroneous foundation. In the case at hand it was revealed by questions put by the judge and by the examination on voir dire that the valuation given by the witness Mason was based solely on the reproduction cost theory. Had this been apparent when the evidence was introduced the judge could in his discretion have excluded it. It was no less within his discretion to order the evidence struck when he learned what it was based on.

2. The petitioner also excepted to the judge's refusal to allow the witness Mason to give his opinion as to "the effect of an impending public taking with respect to the market value of real estate in the area of the taking." The

petitioner's offer of proof was that Mason would have answered that the imminence of the land taking in question substantially depressed real estate values in the area. The question was too broad, for it was directed to the effect of takings in general. It was within the judge's discretion to exclude the question on this ground. The offer of proof, to be sure, was more specific and related to the case at bar. But the ruling was properly made on the question.

3. One Bartram, a real estate expert called by the Authority, testified that in his opinion the property taken was worth $38,400 at the time of the taking. In so concluding he relied both on sales with some degree of comparability and on a capitalization of the rental income. On cross-examination, the court excluded the petitioner's question: "[W]hat effect do you think that [apparently, Bartram's questioning of the petitioner's tenants in January of 1963] has on the rental value of the property as of the time of the taking?" One Conway, another real estate expert called by the Authority, testified that in his opinion the property was worth $35,000 when taken. On cross-examination, the following question was excluded: "Now, Mr. Conway, as a real estate man, broker, would you say that the eminent domain taking authority appraiser coming to a property about a year before the taking would have any effect at all upon the rental value of the subject property?" The petitioner excepted to the exclusion of these questions.

Under G. L. c. 79, § 12, as amended by St. 1959, c. 626, § 4, the landowner is entitled to damages equal to the value "before the recording of the order of taking." The quoted phrase means "before the beginning of the entire public work which necessitates the taking." *Connor* v. *Metropolitan Dist. Water Supply Commn.* 314 Mass. 33, 40. *Alden* v. *Commonwealth,* 351 Mass. 83, 86. Thus, where the value of the land is enhanced because it is known that the land will be taken by eminent domain, the landowner is not entitled to this increase in value. *Smith* v. *Commonwealth,* 210 Mass. 259, 262–263. *Cole* v. *Boston Edison Co.* 338 Mass. 661, 665–666.

Although we previously have not specifically dealt with a case under G. L. c. 79, § 12, where the value *decreased* because of the impending taking, the principle is the same. The general rule is that the damages paid to the landowner likewise should not be affected by such a change. Annotation, 5 A. L. R. 3d 901. Hence, under the statute the landowner is entitled to damages equal to the property's value, unaffected by any knowledge of an impending taking. See Nichols, Eminent Domain (Rev. 3d) § 12.315 [1].

On cross-examination the petitioner apparently was attempting to discover whether the figures suggested by Bartram and Conway were based on rental values which had already been affected by the prospective public taking. If so, their opinions on valuation would not have been based on the correct rental values. The petitioner had a right to cross-examine along these lines to ascertain the basis of the experts' opinions. The exclusion of the petitioner's questions on cross-examination constituted prejudicial error. *Malden Equip. Corp.* v. *Malden Redevelopment Authy.* 353 Mass. 495, 496–497.

4. Other questions argued by the petitioner need not be discussed, for they probably will not arise on a retrial of the case.

*Exceptions sustained.*