SALVATORE DiIORIO & another *vs.* N. RALPH TIPALDI & another.

Essex.     March 10, 1976. — November 24, 1976.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Negligence,* One owning or controlling real estate, Glass door, Due care of child, Guest, Contributory, Assumption of risk.  *Conflict of Laws.*
·   *Evidence,* Relevancy and materiality.

Evidence of the circumstances in which an eleven-year old boy was injured when he crashed into a sliding glass door at a neighbor's house warranted a finding of negligence by the owners of the house and did not require a ruling of law that the boy was contributorily negligent.  [642-645]
In an action of tort, the failure of the judge to instruct the jury on the defense of assumption of the risk did not prejudice the defendants where he put the issue to the jury in his charge on contributory negligence.  [645-646]
In a tort action to recover damages for injuries suffered by the plaintiff when he crashed into a sliding plate glass door, the admission of evidence about the difference between plate glass and safety glass did not constitute prejudicial error where the plaintiffs' disavowal of any claim on that basis occurred after all the evidence was in and no motion was then made to strike the evidence and where the judge's instructions to the jury ruled out any issue as to safety glass. [646-647]

TORT.    Writ in the Superior Court dated August 4, 1969.

The action was tried before *Brogna,* J.

*Richard L. Neumeier* (*Philander S. Ratzkoff* with him) for the defendants.

*Neil Sugarman* (*Charles E. Blumsack* with him) for the plaintiffs.

GOODMAN, J.   On June 25, 1967, the plaintiff, Salvatore DiIorio,[1] then eleven and one-half years old, was invited to the home of the defendants, Ralph Tipaldi and Julie I. Tipaldi, to play with their two boys, seven and nine years old respectively. The Tipaldi house and the DiIorio house, both in Weston, Connecticut, were next to each other about 150 to 250 feet apart; and the children played together almost every day. That day they played from about 10:00 A.M. mostly in the Tipaldi yard and house. The weather was sunny in the morning; it then rained, cleared up, and became sunny again. The boys played in the mud, having mud fights, and about 7:00 to 7:15 in the evening went upstairs in the house to shower. After the showers an argument started between Salvatore and one of the Tipaldi boys about whose shirt was larger. Salvatore could not find his shirt and ran down to retrieve it from the porch. He ran out of the room, down the hall, down the stairs, through the living room, through the dining room, and into the glass door between the dining room and the porch. This door was a sliding panel — one of two glass panels, each about seven feet high and three feet wide (the other panel was fixed) looking out onto the porch. The sliding panel had a handle and a steel frame.

The door had been open all during the day, and it was open when the boys went upstairs to shower. Mrs. Elsie Tipaldi, the grandmother of the Tipaldi boys, who was babysitting that day, then closed the door. Salvatore testified that as he ran through the dining room toward the porch, "[a]ll I saw was a clear passage; no distortions, no reflections, or anything on the door to indicate that it was closed. All I saw was what seemed to be clear air." He believed that the door was open. There was no decal or other warning mark on the door, and there never had been. He also testified that it was dark in the dining room — no

---

[1] The other plaintiff is Michael DiIorio, Salvatore's father.

DiIorio *v.* Tipaldi.

lights were on, but he could distinguish objects, and it was not so dark that he needed artificial illumination. Outside, beyond the porch, it was beginning "to be like early twilight"; the porch was a little darker because of the roof. It was about 8:00 in the evening. During the day of the accident the boys had been in and out of the house; and Salvatore had used the open doorway to go into the house about twenty to thirty times. Further, during the five or six years he had lived next to the Tipaldis he had had occasion to open the sliding panel at least ten times.

Salvatore was severely injured by the broken glass, and he and his father, Michael DiIorio, who claimed consequential damages, brought this action of tort against the Tipaldis in the Superior Court in Essex County. (The Tipaldis were by then living in Andover, Massachusetts.) The case was tried to a jury in December, 1973, and verdicts were returned for both plaintiffs. The defendants appealed and contend that: (1) their motion for directed verdicts and motion for entry of verdicts under leave reserved should have been allowed because there was not sufficient evidence of the defendants' negligence and because Salvatore was guilty of contributory negligence as a matter of law, (2) the trial judge should have instructed the jury on assumption of the risk, and (3) the trial judge should not have admitted certain testimony concerning safety glass.

1. The major question argued by the defendants is whether, on the facts as the jury could have found them from the evidence most favorable to the plaintiffs and inferences therefrom, the defendants were under a duty to Salvatore in the exercise of reasonable care (as the trial judge put in his charge to the jury) to "have done something to the surface of the glass to make it visible when slid over, closed; so that not only adults would not be injured by bumping into it, but children."[2]

---

[2] The plaintiffs expressly disavowed any reliance on any other claim of negligence such as the failure of Elsie Tipaldi to warn Salvatore when she slid the door closed or the failure to use safety glass in the construction.

Since the accident occurred in Connecticut the law of Connecticut measures the duty which the Tipaldis owed to Salvatore, a social invitee. *Brogie* v. *Vogel,* 348 Mass. 619, 621 (1965). Under Connecticut law the duty toward a social invitee is the same as that owed to a business invitee. Conn. Gen. Stat. Ann. tit. 52, § 52-557a (1960). *Kopjanski* v. *Festa,* 160 Conn. 61, 64-65 (1970), citing *Romenici* v. *Trumbull Elec. Mfg. Co.* 145 Conn. 691, 693 (1958), which expresses that duty as one of "[d]ue care [which] required the defendant, when it knew or reasonably should have known of the dangers of the situation upon its premises, to take reasonable precautions to prevent injury to an invitee." Compare *Mounsey* v. *Ellard,* 363 Mass. 693, 708 (1973). Where the duty of reasonable care is owed to a child, Connecticut has held that "it was not to be expected that a child would use the care of an adult . . . .. One is required to use greater care where the presence of children is reasonably to be expected." *Scorpion* v. *American-Republican, Inc.* 131 Conn. 42, 46 (1944). Compare *Brown* v. *Knight,* 362 Mass. 350, 352 (1972), where the court said: "The law, as well as adults, makes allowances for the impulsiveness and lack of maturity and experience of children." Both in Massachusetts and in Connecticut there has been much the same adaptation of the standard of due care to the propensities of children. Compare the facts in *Dennehy* v. *Jordan Marsh Co.* 321 Mass. 78, 80-81 (1947), with those in the *Scorpion* case. See *Breen* v. *Boston Housing Authy.* 348 Mass. 773, 773-774 (1964); *Pires* v. *Quick,* 366 Mass. 313, 314-315 (1974). See also *Altman* v. *Barron's, Inc.* 343 Mass. 43, 46-47 (1961).

These general standards have not — so far as the parties and our own research have discovered — been applied in Connecticut to a similar accident resulting from a collision with a glass door or other glass portion of a building. We therefore look to Massachusetts law to see how these standards have been applied to such accidents. *Seemann* v. *Eneix,* 272 Mass. 189, 195-196 (1930). *Bradbury* v. *Central Vt. Ry.* 299 Mass. 230, 233-234 (1938). *Stern* v. *Lieber-*

*man*, 307 Mass. 77, 78 (1940). See Currie, On the Displacement of the Law of the Forum, 58 Col. L. Rev. 964, 969-970 (1958). The defendants point to three Massachusetts cases in which injuries resulted from contact with glass construction in buildings and in which recovery was denied as a matter of law: *Rosenberg* v. *Hartman*, 313 Mass. 54 (1943); *Valunas* v. *J.J. Newberry Co. Inc.* 336 Mass. 305 (1957); *Flynn* v. *F.W. Woolworth Co.* 338 Mass. 789 (1959). They argue that these cases are controlling and distinguish *Jaillet* v. *Godfried Home Bakeries, Inc.* 354 Mass. 267 (1968), in which the Supreme Judicial Court upheld a verdict for a plaintiff who had walked into a wall of glass at the entrance of the defendant's bakery-delicatessen. We do not believe that those three cases require that the defendants prevail as a matter of law. In *Jaillet*, the court held that those cases were distinguishable on their facts. We likewise think that they are distinguishable on their facts from the present case. In *Rosenberg* (55), the court pointed out that the door "could not have been wholly invisible. Its handles, lock, and fittings were in plain sight." In *Valunas* (306) "the location and construction of the doors and panels were plain and obvious." And in *Flynn* the plaintiff (as described in *Jaillet* at 269) "pushed on a door she knew to be one and shattered the glass."

In this case, as in *Jaillet*, the evidence presented a jury question whether the defendants violated their "obligation to refrain from creating a situation which is a source of danger to [the plaintiff]" (268). The jury could have found that the lighting conditions were such that, unlike the door in the *Rosenberg* case, the handle and steel frame were not sufficient to give warning of the closed door which had been open throughout the day. Further, the injured plaintiff here was an eleven and one-half year old boy from whom some heedlessness could be expected, just how much was for the jury to say. It seems to us particularly within the province of the jury to decide whether the defendants had a right to expect that an eleven and one-half year old would reason (as the defendants put it in their brief) that

"the long day of play was over; that nightfall was approaching, although it was light enough so artificial illumination was not needed ... that the temperature had obviously dropped; and that therefore someone might shut the sliding door."[3]

The defendants' further argument that the plaintiff was contributorily negligent as a matter of law is answered by our previous discussion. See *Boland* v. *Connecticut Co.* 83 Conn. 456, 457 (1910); *Rutkowski* v. *Connecticut Light & Power Co.* 100 Conn. 49, 52-53 (1923). Compare *Jaillet* v. *Godfried Home Bakeries, Inc.* 354 Mass. at 268-269; *Goldstein* v. *Gontarz*, 364 Mass. 800, 804 (1974); *Tanner* v. *Eliot Realty Corp., ante,* 411, 413-414 (1976).

2. The defendants contend that they are entitled to a new trial because of the failure of the trial judge specifically to charge on the defense of assumption of the risk. We disagree. The elements of this defense have been stated by the Connecticut Supreme Court: "Risks are not assumed by a plaintiff unless he has, or ought to have, knowledge and comprehension of the peril to which he is exposed, and, having such knowledge and comprehension, he continues of his own volition to subject himself to that peril." *Dean* v. *Hershowitz*, 119 Conn. 398, 412-413 (1935). *Cummings* v. *General Motors Corp.* 146 Conn. 443, 451 (1959). However, on the evidence in this case Salvatore's knowledge and reason to know were at issue in the defense of contributory negligence; here these defenses overlapped. See *Ballou* v. *Jewett City Sav. Bank,* 128 Conn. 527, 531-532 (1942); *Tanner* v. *Eliot Realty Corp., ante,* 411, 413

---

[3] *Rosenberg* and *Flynn* both involved adults. In *Valunas* the case was argued (as the original papers show) and decided on the basis that the duty owed to the minor plaintiff was the same as that owed to the adult whom he was accompanying. The following cases in other jurisdictions which have considered *Rosenberg* and *Valunas,* or both, have given weight to the fact that the plaintiff was a child as well as to other factors present in our case. See *Giordano* v. *Mariano,* 112 N.J. Super. 311, 316-317 (App. Div. 1970) (a fact pattern similar to ours); *McCain* v. *Bankers Life & Cas. Co.* 110 So. 2d 718, 719, 722 (Fla. App. 1959); *Shannon* v. *Butler Homes, Inc.* 102 Ariz. 312, 315, 317-318 (1967).

(1976); Annot., 82 A.L.R. 2d 1218, 1248-1257, § 9 (1962) ("[w]here risk-assuming conduct is unreasonable; assumption of the risk as a phase of contributory negligence"). Restatement 2d:   Torts, § 496A, comment d (1965). Essentially, the evidence posed the question whether, in light of the facts of which the jury could have found Salvatore had been made aware, it was unreasonable for him to proceed as he did. But the judge put this issue to the jury in his charge on contributory negligence.[4] Since the jury found for the plaintiffs on this issue we need not determine whether other elements of the defense of the assumption of the risk were relevant to this case. The failure to charge them could not have prejudiced the defendants. *Gréy* v. *Fibreboard Paper Prod. Co.* 65 Cal. 2d 240, 245-246 (1966).

3. The defendants complain that the admission of evidence about the difference between plate glass and safety glass and the availability of safety glass when the house was built was prejudicial error, since the plaintiffs had disavowed any claim on that basis and had limited their claims to a negligent failure to place some warning mark on the glass door (see fn. 2, and related text). So far as the record before us discloses, the limitation occurred at a lobby conference after all the evidence was in. No motion was then made to strike the evidence about the safety glass, which was within the scope of the broadly worded substitute declaration. Further, the charge confined the jury specifically to the claim pressed by the plaintiffs, and thus ruled out of the case any issue as to safety glass. (Nor did the defendants ask for more pointed instructions on

---

[4] He charged that the defendant had the burden of showing that the plaintiff "did something or failed to take a precaution, not that the ordinary prudent adult would have taken, but that the ordinary child of his age and years should have taken." He specifically put to them the question whether it was "reasonable conduct for a child of his age to go running the way he did ..." and whether "an average child ... would have remembered or said, 'Gee, I remember that that's a door there; before I go through it, I better stop and make sure it's open.' Would a child have done that? Assuming, as he admitted, that he had been through that door hundreds of times and knew there was a glass sliding partition."

the matter.) We assume that the jury confined itself to the issue as the judge presented it in his charge and disregarded the testimony about safety glass. See *Ferris* v. *Turner,* 320 Mass. 555, 558 (1947).

*Judgments in accordance*
*with the verdicts.*