Roach *v.* Newton Redevelopment Authority.

Martin J. Roach *vs.* Newton Redevelopment
Authority
(and a companion case between the same parties).

Middlesex.   September 13, 1979. — November 6, 1979.

Present: Brown, Greaney, & Perretta, JJ.

*Damages,* Eminent domain. *Eminent Domain,* Damages. *Value.*
*Evidence,* Value.

At the trial of an action for assessment of damages for a taking by
eminent domain, there was sufficient evidence concerning the prob-
ability that a private developer could have obtained rezoning of the
property from residential to commercial use to permit consideration
of the issue on the question of the value of the land. [624-626]

The judge at a nonjury trial of an action for assessment of damages
for a taking by eminent domain did not abuse his discretion in ad-
mitting evidence that the taking authority had obtained a rezon-
ing of the property from residential to commercial use subsequent
to the taking where there was evidence from which he could find
that there was a likelihood that a private developer as well as the
taking authority could have obtained the rezoning. [626-628]

At a jury trial of an action for assessment of damages for a taking by
eminent domain where the major issue concerned the probability
that a private developer could have obtained rezoning of the prop-
erty from residential to commercial use, the judge, by his precise

and unequivocal instructions to the jury, in effect excised from the case a challenged finding from a previous non-jury trial as to the taking authority's having obtained such a rezoning subsequent to the taking. [628-630]

At the trial of an action for assessment of damages for a taking by eminent domain, the judge did not err in refusing to strike testimony of the plaintiff's expert as to the value of the property where, although he stated his opinion that there was a "certainty" that the land would be rezoned from residential to commercial use, his opinion as to value was predicated not on an assumption that the land had already been rezoned but upon the existing zoning as affected by a reasonable probability of a zone change. [630-631]

At the trial of an action for assessment of damages for a taking by eminent domain, the judge did not abuse his discretion in allowing a witness to testify as to the purchase price of two parcels of property which were located in a different town and in a differently zoned district where there was sufficient evidence of comparability. [632-633]

CIVIL ACTIONS commenced in the Superior Court on May 5, 1971, and December 12, 1972.

The cases were tried before *Bonin*, C.J.

*Philip M. Cronin* for the defendant.

*Robert Cohen* for the plaintiff.

GREANEY, J. Following takings of his land by the defendant on May 13, 1969, and December 15, 1970,[1] the plaintiff filed petitions for assessment of damages. G. L. c. 79, § 14. The petitions were tried to a Superior Court judge without a jury and thereafter before a Superior Court judge with a jury.[2] G. L. c. 79, § 22, appearing in St. 1973, c. 983, § 1. At both trials, the dominant issue

---

[1] The first taking took place under the provisions of former G. L. c. 121, § 26P(*b*), which was repealed by St. 1969, c. 751, § 2; the second taking was governed by G. L. c. 121B, § 11(*d*), inserted by St. 1969, ·c. 751, § 1.

[2] The cases were consolidated. After the jury trial, a single verdict was returned (*H.E. Fletcher Co.* v. *Commonwealth*, 350 Mass. 316, 317 [1966]), but separate judgments were entered, the amount of the verdict being apportioned between the two cases in accordance with a stipulation of the parties.

concerned the probability that a private developer could obtain rezoning of the property from residential to commercial use. The plaintiff's proof at both proceedings was determined sufficient to permit the fact finder to assess the probability of rezoning on the issue of value. On appeal, the defendant claims that the admission in evidence of post-taking rezoning accomplished at the defendant's request flawed the judge's decision at the nonjury proceedings, and, in turn, vitiated the jury's verdict. Issues related to that question concern certain testimony by two of the plaintiff's witnesses. We affirm the judgments.

The evidence at both trials bearing on the rezoning question is summarized. The land taken consisted of seven parcels totalling 372,994 square feet in the Lower Falls section of Newton. The plaintiff acquired parcels 1 and 2 in 1957, parcel 3 in 1964, and parcels 4 through 7 in 1965. At the time of the takings all the land, with the exception of parcel 3, was zoned for single family residential use.[3]

At the nonjury trial, the plaintiff, to support his contention that a private owner could obtain rezoning for commercial use (the construction of office buildings), introduced evidence that during his ownership he had assembled the lots, including landlocked back parcels with no access to a main street, as a package for development; that he had removed existing buildings; and that he had leveled a sizeable hill on the westerly portion of the land, leaving the whole site generally level and graded. All necessary utilities were proximate and available. Public transportation (on the M.B.T.A. line) and the Massachusetts Turnpike were nearby, and the site was close to the Route 16 (Washington Street) interchange with Route 128, the major circumferential high-

---

[3] The evidence indicated that parcel 3 was purchased from the Commonwealth and had been a part of a Route 128 service road boundary. It was unzoned at the time of the takings.

way surrounding Boston. There was evidence that there had been commercial development in the immediate vicinity much of which involved changes in zoning classifications by reason of the presence of Route 128. These included a service station and restaurant, a hotel, a motel, a nursing home and various office buildings.[4] The plaintiff also introduced evidence, through the 1963 Community Renewal Program Report for Newton, that the highest and best use of the vacant land located in the Lower Falls area adjacent to Route 128 was for development as a "prestige garden-type office development"[5]

[4]This evidence revealed the following commercial uses nearby: a gas station and a Howard Johnson's restaurant constructed on Route 128 about 300 to 400 feet from the land; property directly across Washington Street on Walnut Street in Wellesley approximately 500 feet distant that was subject to extensive building, representing a change in land use pattern, during the 1960's; the presence of a Holiday Inn built in the early 1960's at the Grove Street intersection of Route 128, 300 to 400 feet from the property; a Marriott hotel, approximately one mile to the north of the property; office buildings on Route 9, the next intersection on Route 128 from Route 16; a nursing home on Washington Street approximately 800 to 1,000 feet from the site; and indications that through the 1960's specific parcels in the area of the property had been rezoned from residential to commercial uses, and that existing commercial uses had intensified their activities where the zoning ordinance permitted expanded or increased commercial use.

[5]The community renewal plan stated in part:

"The land within the Lower Falls study area is located ideally in relation to the industrial and research uses along Route 128. A large section of this study area appears to be undeveloped and does not take advantage of location. Conditions are recognized in the suggested land use pattern which includes a garden-type office development in the underdeveloped area abutting Route 128. . . .

"The construction of such office facility in a garden section would not detract from the residential character of the neighborhood. . . .

"Highest and best use in this study area includes the development of vacant land adjacent to Route 128 as a prestige garden-type office development. . . .

"Factors such as locational advantage, Newton's prestige reputation, and the introduction of the Massachusetts Turnpike extension combine to make Newton a desired community. These external factors can be of economic advantage. . . . They can encourage employment, broaden the tax base and restore land to high future productivi-

and, over the defendant's objection, evidence that some of the plaintiff's land had been rezoned after the takings for commercial uses on petitions filed by the defendant. The defendant presented evidence that it was unlikely that a private owner could obtain rezoning, because access to the land was handicapped by lack of good frontage on a major highway.[6] In response, the plaintiff provided evidence that implementation of one of the urban renewal plans for the site contemplated access to all the parcels by way of Waverly Place and that this means of access was available to the plaintiff.[7]

ty. To accomplish this will require a re-study of the zoning ordinance and adoption of substantial zoning map and ordinance changes to permit these areas to be developed to their indicated highest uses. . . .

"Newton Lower Falls Study area.

"Land within this study area is located ideally in relation to industrial and research uses along Route 128 and is considered by some developers to be close to a 100% location.

"Highest and best use of the land immediately adjacent to Route 128 and extending to Washington Street is for a garden-type prestige development. Maximum location advantages exist for both advertising and transportation, and other uses of the site such as a motel or housing would not be its best use. . . .

"The demand for additional office or research space is great in the Lower Falls area because Route 128 has made it highly accessible for many portions of the metropolitan area. . . .

"Newton Lower Falls is the point of converging of several important routes and a growing area of industrial and research development."

[6] The defendant's evidence indicated that the entrance to the site from Washington Street was complicated by the intersection of Hamilton Street and Waverly Place at the point where those streets joined Washington Street, that Waverly Place was a narrow access road and that a sizeable wall existed on the property which might impede the flow of traffic.

[7] This evidence consisted of testimony that the urban renewal plan contained two alternatives, one assuming both Federal and State participation and the other only State participation. The latter alternative, which the aldermen had approved, provided for access to the site through Waverly Place substantially as it existed and with the existence of the wall, which was to be removed under the federally assisted alternative. Additionally, it was brought out that parcel 1 comprising approximately 26,600 square feet was available to be used in whole or in part for access, and that the plaintiff had originally established Waverly Place.

Based essentially on this evidence, the judge at the nonjury proceedings found that the highest and best use of the plaintiff's land would be for business and commercial office use, that it was reasonably probable that a private developer could obtain a zone change to permit those uses, and that the defendant had obtained such a zone change and had utilized the land for commercial office space.[8] He assessed damages in the amount of $559,481.

At the jury trial, the findings from the nonjury case were introduced,[9] and most of the evidence summarized above was repeated before the jury. To this was added evidence that about seven commercial zone changes in the immediate area had been allowed within a reasonable time prior to the taking, while about thirteen had been denied. There was additional expert testimony by witnesses for the defendant that a change in zone through private initiative was improbable.[10] The only other

[8] "I find that the highest and best use for the [plaintiff's] land would be for business and commercial office use and that its geographic location for that use is excellent and that there was a reasonable probability that a zoning change could be obtained for that purpose by a private individual. I find that such a zoning change was obtained by the Newton Redevelopment Authority and that this land is presently being utilized for these purposes."

[9] The findings from the nonjury case were introduced by agreement of the parties and read to the jury by the judge. We reject the plaintiff's argument that the defendant, by stipulating to the admission of the findings, waived all objections thereto. It is apparent from the colloquies between the judge and counsel that the defendant knew it could not seek appellate review of the challenged rulings at the jury waived trial until after the jury trial, and did not intend to abandon its objections. The judge at the jury trial indicated that he felt he had limited authority to change the findings from the previous trial. The stipulation was designed to make the jury trial more efficient and not as a surrender of the right to appellate review. With the exception of one issue, as to the judge's charge, we consider the defendant's rights adequately saved. See *Haufler* v. *Commonwealth,* 372 Mass. 527, 528-532 (1977).

[10] Some of the defendant's witnesses thought that there might be some community opposition to commercial development in the area,

events of significance for our purposes consisted of the judge's exclusion of the plaintiff's offer of evidence regarding the land use trends contained in the Community Renewal Program Report and the offer of evidence concerning the post-taking rezoning. The judge took several measures in the course of the trial designed to sharpen the jury's focus on the zoning issue which will be discussed in part 2 of this opinion. The jury assessed damages in the amount of $1,186,101.

1. A landowner in an eminent domain action has the right to recover the market value of his property in light of the highest and best use to which the land could reasonably be put. *Skyline Homes, Inc.* v. *Commonwealth,* 362 Mass. 684, 685-686 (1972). *Colonial Acres, Inc.* v. *North Reading,* 3 Mass. App. Ct. 384, 386 (1975). So long as the prohibited uses are not unduly speculative, the trier should consider them "with discounts for the likelihood of their being realized and for their futurity." *Skyline Homes, Inc.* v. *Commonwealth, supra* at 686, and authorities cited. 4 Nichols, Eminent Domain § 12.314 n.1 (rev. 3d ed. 1978). Compare *Tigar* v. *Mystic River Bridge Authy.,* 329 Mass. 514, 518-519 (1952). The fact that a potential use is prohibited by the zoning law at the time of the taking does not preclude its consideration. *Wenton* v. *Commonwealth,* 335 Mass. 78, 81-82 (1956). *Lee* v. *Commonwealth,* 361 Mass. 864 (1972). 4 Nichols, *supra* § 12.322[1], and authorities cited in n.6 at 12-637 − 12-649. The probability of such rezoning is a matter of proof, and "the judge has a margin of ultimate discretion in deciding whether the proof has gone far enough" to warrant consideration of the issue by the trier. *Skyline Homes, Inc.* v. *Commonwealth, supra* at 687, and authorities cited. We are satisfied that

---

but the principal basis for their opinions as to the prospect of rezoning was the question of access. The plaintiff again obtained the concession that an approved urban renewal plan existed using the same access available to him as the primary means of access to the land.

the evidence at both trials concerning the probability that a private developer could obtain a rezoning, apart from the disputed evidence, went sufficiently beyond a bare unfounded hypothesis to permit the judges to exercise their discretion to allow consideration of the issue on the question of value. There was proof that the land had certain characteristics which made it suitable for commercial use, such as its generally favorable contours, location near major highways, nonadverse soil conditions, and contiguity with Route 128. The facts that the owner had assembled the land over a period of time and that the purchase of parcels 4, 5, 6 and 7 in 1965 provided direct access to Washington Street for the previously isolated rear parcels were important, as was the fact that the site, because of its location and surrounding development, could be considered unfit for residential use within the zoning categories and land use patterns which existed at the time of the takings. Moreover, there was evidence at both trials of considerable commercial development nearby, stemming from the presence of Route 128, some of which had required and received zoning action. This type of proof has been recognized as sufficient to permit a judge in his discretion to allow the prospect of a zone change to be considered as bearing on value. See *Skyline Homes, Inc.* v. *Commonwealth, supra* at 688, and cases cited. There also was evidence at the nonjury trial concerning programmatic land use plans that projected commercial uses for the general area where the plaintiff's land was located. This type of evidence has also been recognized as having an important bearing on the issue.[11] *Id.* There thus was a sufficient evidentiary

---

[11] We would have some concern with the judge's admission in evidence of the community renewal plan had not the portions of the plan introduced been confined to statements of broad land use goals for the area as a whole without specification of the plaintiff's land. But in the posture in which it was admitted, it cannot be said that the programmatic themes in the plan were so dependent on the resources of the renewal agency as to preclude a private developer from achieving the same goals.

linkage between the owner's goals which were barred by the land's zoning and the reasonable prospect of change to take the proof beyond that of a speculative showing that the land was suitable to a given use which was prohibited by law.

2. We next turn to the question of the admission at the nonjury trial of evidence that after the taking the defendant had petitioned for, and received, a change in the zoning classification of the land. The evidence came in through testimony that the land had been rezoned for commercial and limited industrial use,[12] through the introduction of three exhibits reflecting the defendant's petitions for a change of zone and favorable aldermanic votes thereon. The judge made it clear when he admitted the evidence that he considered it to be cumulative of other evidence already before him or promised as to a probability of rezoning.

As a general rule, an actual change in zoning which takes place as a result of the project for which the property is taken should not be taken into account in valuing the property in a land damage proceeding. 4 Nichols, *supra* § 12.322[1], and authorities cited in n. 7.1 at 12-655 — 12-656. See also *Williams* v. *Denver,* 147 Colo. 195, 200-202 (1961); *State* v. *Kruger,* 77 Wash. 2d 105 (1969); Annot. 9 A.L.R.3d 291, 320-323 (1966). Although no Massachusetts decision has been brought to our attention, the logic of decisions close in point inescapably demonstrates that we would follow the rule. See *May* v. *Boston,* 158 Mass. 21, 29 (1893) ("It was evidently the purpose of the Legislature not to permit landowners to recover damages for the land taken for a public use at a value enhanced by the public improvement which owes its existence to the change of use of the very land which is to be paid for"). To the same effect see *Smith* v. *Commonwealth,* 210 Mass. 259, 263 (1911); *Cole* v. *Boston*

---

[12] There is no indication that any of the plaintiff's land has been devoted to anything but commercial or residential uses by the defendant.

*Edison Co.,* 338 Mass. 661, 665-666 (1959). See also *Lipinski* v. *Lynn Redevelopment Authy.,* 355 Mass. 550, 553 (1969) (landowner cannot enhance the value of his land by evidence that it is to be taken by eminent domain); *Colonial Acres, Inc.* v. *North Reading,* 3 Mass. App. Ct. at 387 (evidence of a special permit issued to the town prior to the taking was not probative that such a permit would be issued to a private landowner). But apart from the foregoing rules, it is also recognized that a change in zoning subsequent to the taking which permits the previously prohibited use is significant evidence of the existence at the time of the taking of a reasonable probability of change (4 Nichols, *supra* § 12.322[2], at 12-670 — 12-672), and that, in cases of the type under consideration, "care must be taken to distinguish between availability for public use which constitutes availability even in private hands and availability which is peculiar to the government." *Id.* § 12.315, at 12-403 — 12-410, and authorities cited. See also *Teele* v. *Boston,* 165 Mass. 88, 92 (1896); *Holyhood Cemetery Assn.* v. *Brookline,* 215 Mass. 255, 256-257 (1913).

The critical question in this case is whether the judge at the nonjury proceeding could reasonably find that there was a likelihood that a private developer, as well as the taking authority, could have obtained the rezoning. If this was so, then the subsequent change of zone was not *solely or primarily* due to the talents or political leverage of the taking authority or the specific characteristics of its project, and the judges at both trials would possess a margin of discretion in deciding whether to admit or exclude the evidence as additional proof of a reasonable prospect of change bearing on value.

We conclude, based on all of the evidence discussed in part 1 of this opinion, that the proof had advanced to the point where the judge at the nonjury proceedings could exercise his discretion to admit and consider the evidence. We also think in particular that the fact that the agency had prepared a plan which had been approved by

the aldermen, and which contemplated access to the proposed project through the existing roads, including Waverly Place, was of some importance. This fact could have been relied upon by the judge as justifying admission and consideration of the evidence, in light of the defendant's evidence that lack of access was the principal reason making it unlikely that a private developer could obtain a zone change. The defendant's argument concerning the judge's ruling and treatment of the evidence fails to acknowledge this state of the proof, the existence of the exception to the general rule, and the range of the judge's discretion on the subject.

Moreover, the judge's treatment of the issue at the jury trial constitutes an independent basis for upholding the verdict. At that trial, all evidence directly or indirectly concerning the defendant's rezoning efforts was excluded, including the land use goals contained in the Community Renewal Program Report.[13] The issue as to probability of rezoning was submitted to the jury by way of a special question.[14] The judge's instructions on the issue cover thirteen transcript pages and discuss all aspects of the law on the topic. The evidentiary effect of the findings made in the non-jury case was principally dealt with in the course of the instructions on the zoning question and in a manner which had the effect of confining the jury's attention to the findings concerning the probability of rezoning by a private owner.[15] No refer-

---

[13] The exclusion of the evidence also would not constitute an abuse of the judge's discretion. See *Haufler* v. *Commonwealth,* 372 Mass. 527, 530 n.3 (1977), and *D'Annolfo* v. *Stoneham Housing Authy.,* 375 Mass. 650, 656 (1978).

[14] "Just prior to the takings in 1969 and 1970 (and for these purposes they may be considered as one taking), was there a reasonable probability that the land in question owned by the petitioner would soon be rezoned from single family residential use to commercial or business use?" The jury answered the question yes.

[15] The charge on this aspect reads in part as follows:

"In the earlier case, the judge who heard that was required to file a written decision, in which he found the amount of damages and made cer-

ence was made in the course of the instructions to the
disputed finding on the defendant's rezoning and the
jury were instructed in clear terms that they could not
take into account on the issue of the reasonable probabil-
ity of rezoning any activity pertaining to the defendant's
urban renewal project.[16] The defendant did not object to
any portion of the instructions on the zoning question or

---

tain findings of fact. You have these findings and will have them in
the jury room with you as Exhibit 1. I am telling you this because the
same statute that provides for two trials provides that the previous
decision or findings, including any award of damages, shall be prima
facie evidence upon such matters as are put in issue by the pleadings.
In this case, the question of whether or not there was a reasonable
prospect of petitioner's land being rezoned soon after the taking is at
issue. The judge in the prior case found there was such a reasonable
probability that a zoning change could be obtained by a private in-
dividual. He also found a dollar amount of damages for each of the
two parcels taken, although you will be considering them as one
parcel in returning your verdict."

[16] "In deciding whether there was a reasonable probability of such
rezoning to be accomplished soon, you may consider the following fac-
tors: Petitions for rezoning that were filed both before and after the
takings in the City of Newton, and the action taken by the City on
those petitions for rezoning. You may consider the length of time
that the petitioner owned the property and the efforts, if any, made
by him to have the land rezoned. You may consider the character of
the neighborhood and surrounding land, and whether it was essential-
ly residential or business in nature. You may consider whether there
had been any rezoning of land from residential to business or commer-
cial use in the geographical area of the petitioner's land that you con-
sider relevant. You may not, however, consider any effect on zoning
created by the project for which this property was in fact acquired.
This means that you may not take into account in any way on the
issue of reasonable probability of rezoning a zoning change after the
taking on this locus related to the very purpose of the taking.

"In short, you may not consider if this property was taken for urban
renewal that after the urban renewal taking it was rezoned in connec-
tion with the urban renewal. That is not a fit subject for your consid-
eration. Nor may you consider any actual construction that occurred
on this site after the taking as part of an urban renewal or redevelop-
ment project. It is not sufficient for you on the issue of reasonable
probability to show merely that the land is suited to a given use. The
petitioner has the burden of proof by a fair preponderance of the evi-
dence that such rezoning would have soon been accomplished."

to the instructions on the weight to be given to the findings in the nonjury proceedings.

In our opinion, the precise and unequivocal instructions of the judge in effect excised from the case the disputed finding in the nonjury decision. The charge confined the jury specifically to the question of probable rezoning as developed by the proof at the trial. We also think the defendant was under an obligation to object to the charge if it was dissatisfied by the treatment of the issue. We therefore assume that the jury confined itself to the issue in the special question in light of the evidence at the trial, and that they were not confused, misled, or inflamed in any respect by the nonjury findings.[17] *Marlboro Bldg. Assn.* v. *American Broaching Mach. Co.,* 234 Mass. 506, 509 (1920). *Saragan* v. *Bousquet,* 322 Mass. 14, 20 (1947). *DiIorio* v. *Tipaldi,* 4 Mass. App. Ct. 640, 646-647 (1976).

3. The defendant also objected to certain rulings made by the judge at the jury trial with reference to the testimony of the plaintiff's expert as to value and the testimony of a second witness as to two of the financial aspects of comparable sales.

Bernard Singer, a qualified real estate appraiser, testified for the plaintiff and rendered an opinion that the fair market value of the land at the time of the taking was $1,300,872. In the course of his testimony, he was questioned as to his consideration of the zoning factor in formulating his opinion of value, and he expressed the opinion that there was "a certainty of rezoning for this particular land . . . though we use the technical term 'a probability of rezoning.'" No objection was made by the defendant to the form of the opinion. He was extensively

---

[17] This conclusion is also supported to some extent by the jury's disregard of the amount of damages assessed by the judge after the first trial and its independent calculation of damages at a figure lower than the highest valuations introduced in evidence.

cross-examined[18] and in the course of the cross-examination again stated that "a buyer who buys this property is going to know that this property is going to be rezoned business." At the conclusion of his testimony, the defendant moved to strike Singer's opinion. The motion was denied. The defendant contends that Singer's testimony should have been struck because his evaluation of the property considered the rezoning as an accomplished fact. See *H.E. Fletcher Co.* v. *Commonwealth,* 350 Mass. 316, 323-324 (1966); *United States* v. *Meadow Brook Club,* 259 F.2d 41, 45 (2d Cir.), cert. denied, 358 U.S. 921 (1958) ("It would be improper to value the property as if it were actually being used for the more valuable purpose"). See also 4 Nichols, *supra* § 12.322[1] at 12-657.

The motion was properly denied. An examination of Singer's entire testimony reveals that he did not improperly base his opinion as to value on an assumption that the land had already been zoned to a higher classification. His opinion took into consideration his estimation that the highest and best use of the land would be for commercial development, and the opinion was predicated upon the existing residential zoning as affected by a reasonable probability of a zone change. Furthermore, his opinion considered the zoning factor in light of all the evidence that illuminated the prospect for a change and was based on the correct legal assumption that that prospect might be taken into account by a willing buyer in the price he would pay for the land. *Skyline Homes, Inc.* v. *Commonwealth,* 362 Mass. at 686-687.[19]

---

[18] In permitting liberal cross-examination, the judge said: "[I]f [Singer] chooses to go beyond the reasonable probability standard and to say it was certain and a lead pipe cinch, he is going to expose himself to that kind of cross-examination even more than if he spoke in terms of probability. People shouldn't make lead pipe promises."

[19] The expression of categorical opinions as to the prospect of rezoning was not one-sided. In response to a question by defense counsel whether he gave any weight in his valuation analysis to a reasonable

Singer also testified that, in arriving at his opinion, he relied on sales of land at 19 and 20 Walnut Street in Wellesley that were geographically proximate to the plaintiff's land. Edward Stimson, an associate with the Walnut Street Trust, was called by the plaintiff and testified that the trust had purchased both parcels for prices of $4.74 and $4.04 a square foot, respectively. The defendant objected to the introduction of the sale prices for both parcels on the basis that the sites were in Wellesley and were zoned commercial. The judge admitted the evidence. There was no abuse of discretion. Sufficient evidence of comparability existed to establish a foundation for consideration of the evidence, and "there should be no hard and fast rule that a difference in zones in and of itself renders such evidence inadmissible." *Gregori* v. *Springfield,* 348 Mass. 395, 397 (1965). *Leen* v. *Assessors of Boston,* 345 Mass. 494, 506-507 (1963). See also *Boyd* v. *Lawrence Redevelopment Authy.,* 348 Mass. 83, 85-86 (1964) (discretionary admissibility of sales in a different town). The judge's instructions when the evidence was introduced also kept the jury's consideration of it in bounds, and eliminated the potential for confusion.[20] Its admission fell within the familiar prin-

---

probability of rezoning for the plaintiff's land, Alexander Beal, a land damage appraiser for the defense, replied, "Absolutely none."

[20] "Jurors, I am going to give you a cautionary instruction here. It will be repeated again in the context of the complete instructions. Mr. Singer testified that he considered certain properties comparable or of value in making up his appraisal, and he listed a number of properties and included in the properties Mr. Singer listed was the property at 20 Walnut Street which this gentleman happened to be associated with. He has no other connection with the case. Because of certain rules of evidence, Mr. Singer would not be able to testify directly to the price paid, but a person who had to do with the transaction can testify to the price paid because of his personal knowledge. Now, the problem at the moment and the caution I want to give you is this: Mr. Roach's property at the time of the taking was zoned residential. The property that Mr. Stimson is going to discuss was zoned business or commerical at the time of the sale in question. We know that

ciples governing the admissibility of evidence concerning other sales in eminent domain cases.  See *Congregation of the Mission of St. Vincent de Paul* v. *Commonwealth,* 336 Mass. 357, 359 (1957), and cases cited.

*Judgments affirmed.*

---

because Mr. Singer already testified that it was zoned business or commercial when Mr. Stimson's trust purchased it.

"Now, you mustn't take the dollar value or the per foot value that Mr. Stimson is going to tell you about and automatically transfer that to the Roach land because one was zoned commercial, the Stimson property, and one was zoned residential.  However, if after the case is complete and it is submitted to you you find that there was a reasonable probability of rezoning while Mr. Roach owned the land, if you should determine that later on, the subject matter on which Mr. Mulhern for Mr. Roach had the burden of convincing you, then you will be able to consider in valuing the taken property what a willing buyer would pay a willing seller considering the reasonable probability of rezoning.

"Now, that means if you find at the end of the case this reasonable probability of rezoning, one element that a buyer would consider when he goes to buy the property from Mr. Roach is that reasonable probability discounted, however, by whatever factors you consider appropriate, including the risk of whether or not you will get a rezoning or what may happen, in any event, in the future.  So the cautionary instruction is that although I am allowing this into evidence as some evidence of values involved, you should not assume that there is any automatic transference of the price that will be quoted by Mr. Stimson per foot to the Roach land."