SIDNEY M. BIRD & another,[1] trustees, *vs.* BOSTON
REDEVELOPMENT AUTHORITY.

Suffolk.   October 11, 1979. — November 13, 1979.

Present: HALE, C.J., GREANEY, & DREBEN, JJ.

*Evidence,* Value, Judicial discretion, Relevancy and materiality, View. *Eminent Domain,* Damages. *Practice, Civil,* Argument by counsel.

In an action for assessment of damages for a taking by eminent domain of land used as a parking lot, there were sufficient similarities between the plaintiffs' property and two parking lots sold several years before the taking to permit the judge to exercise his discretion in favor of admitting the sale prices of the lots and to permit the plaintiffs' expert to use the sale prices in support of his opinion of the market value of the plaintiffs' property. [661-662]

In an action for assessment of damages for a taking by eminent domain, the judge did not err in excluding from evidence a certified copy of the deed relating to the sale of a parcel of property relied upon by the plaintiffs' expert as a sale of comparable property. [662-663]

In an action for assessment of damages for a taking by eminent domain in connection with a redevelopment plan, the judge did not abuse his discretion in the admission of the defendant's revised urban renewal plan published shortly after the taking and an overhead photograph of the renewal area taken three years after the taking where the revised redevelopment plan had relevance to show the perimeter of the renewal area as of the date of the taking and the photograph had relevance to distinguish features of the area which existed as of the date of the taking, as opposed to those which came into existence later. [663-664]

─────────────

[1] A. Frederick Richard.

In an action for assessment of damages for a taking by eminent do-
main in connection with a redevelopment plan which had been pub-
lished ten years earlier, reference in the plaintiffs' closing argu-
ment to the amount of real estate taxes paid on the property
during the ten-year period could not be said to have prejudiced the
defendant where the arguments were not stenographically record-
ed and the trial judge specifically stated that he did not interpret
the reference as prejudicial, and where the judge instructed the
jury that the taxes were not an element of fair market value and
were to be disregarded in their calculations. [664]

In an action for assessment of damages for a taking by eminent do-
main, there was no merit to the defendant's contentions that the
verdict was excessive because the plaintiffs' evidence permitted
the jury to consider the enhanced value of the property as a result
of improvements in the urban renewal area which had been effect-
ed by the defendant. [664]


CIVIL ACTION commenced in the Superior Court on Oc-
tober 9, 1974.

The case was tried before *Beaudreau, J.*

*George F. Mahoney* for the defendant.

*J. Owen Todd* for the plaintiffs.

GREANEY, J. By their action the plaintiffs sought an
assessment of damages (G. L. c. 79, § 12) for the taking
of their land on June 28, 1974, by the defendant in connec-
tion with the redevelopment of the downtown waterfront
district. The premises were situated in that district on
Commercial Street at the intersection of Richmond
Street and consisted of a level, blacktopped lot, substan-
tially rectangular in shape, containing 21,397 square
feet, with frontage on and access to both streets. At the
time of the taking the location was licensed as an off-
street parking facility for sixty-five cars and was zoned
for light manufacturing and commerical uses. By stipu-
lation the case was tried to a jury in the first instance.
G. L. c. 79, § 22, as appearing in St. 1973, c. 983, § 1.
The plaintiffs' expert used the market data approach to
valuation and concluded that the highest and best use of
the premises would have been as a site for new construc-
tion within permitted zoning uses, with an interim or

holding use as a parking lot. The defendant's experts used primarily the income approach to valuation and concluded that the highest and best use of the premises would have been a continuance of its existing use as a parking lot. The jury assessed damages in the amount of $267,000. The errors argued by the defendant on appeal concern (1) certain rulings as to the admissibility of evidence; (2) the propriety of a portion of final argument by plaintiffs' counsel; and (3) the denial of the defendant's motion for a new trial. Mass.R.Civ.P. 59(a), 365 Mass. 827 (1974). We affirm the judgment and the order denying a new trial.

1. The defendant claims that the admission of the sale prices for two parking lots in 1964 and in 1966 relied upon by the plaintiffs' appraiser as comparable sales in his market data approach to value was in error. As to both sales there were sufficient similarities between the property determined by the appraiser to be comparable and the plaintiffs' land to permit the judge to exercise his discretion in favor of admitting the sale prices. *Boston & Worcester R.R.* v. *Old Colony & Fall River R.R.,* 3 Allen 142, 145-147 (1861). *McCabe* v. *Chelsea,* 265 Mass. 494, 496 (1929). *Iris* v. *Hingham,* 303 Mass. 401, 408-409 (1939). *Congregation of the Mission of St. Vincent de Paul* v. *Commonwealth,* 336 Mass. 357, 359 (1957), and cases cited. As to the 1964 Columbus Avenue sale, the facts that the parking lot was located in a different area of the city and that it was subject to different zoning would not preclude admissibility of the sale price. See *Boyd* v. *Lawrence Redevelopment Authy.,* 348 Mass. 83, 85-86 (1964) (discretionary admissibility of sales several miles away in a different town); *Gregori* v. *Springfield,* 348 Mass. 395, 396-397 (1965) (discretionary admissibility of sale price of land differently zoned). As to the 1966 Atlantic Avenue sale, the facts that an arrangement existed with a boat company for use of a pier and that a building on the site was tenanted did not require exclusion of the sale price in the absence of proof as to

the specifics of either arrangement or that either contributed in any way to the sale price. The dissimilarities between the comparables and the property taken were thoroughly explored through cross-examination, and the judge's instructions to the jury before the sale prices were admitted kept the jury's focus on the evidence within bounds. Finally, we find no support in the record for the defendant's hypothesis that the plaintiffs' expert used the two sales as independent evidence of value as opposed to sales data in support of, or as background for, his opinion of value for the property.

2. The defendant claims error in the exclusion of a certified copy of the deed relating to the 1966 sale. The purpose of offering the deed appears to have been an effort to clarify a dispute among the testifying appraisers as to the extent of the property included in that sale. The offer of the deed had no value in impeaching the plaintiffs' expert. Nor would it add anything material to the property's description, because that description had already been developed through testimony and through photographs and plans. Its exclusion falls within the familiar rule that "how far the cross-examination of a witness may be considered helpful and relevant to the issues on trial, as well as the extent that the accuracy, veracity and credibility of a witness may be tested, rests largely in the sound discretion of the trial judge, and his action, where as here no abuse of discretion is shown, is final." *Commonwealth* v. *Makarewicz,* 333 Mass. 575, 593 (1956), quoting from *Commonwealth* v. *Shea,* 323 Mass. 406, 417 (1948). *Posner* v. *Minsky,* 353 Mass. 656, 661 (1968). Additional arguments made in the defendant's brief in support of the admission of the deed, namely, that it would have shown the conveyance of rights in adjacent land or flats and that it would have shown that the grant was subject to a lease, were not made below and as a consequence will not be considered here. *Trustees of the Stigmatine Fathers, Inc.* v. *Secretary of*

*Admn. & Fin.,* 369 Mass. 562, 565 (1976). *Corman Realty, Inc.* v. *Rothstein,* 4 Mass. App. Ct. 777 (1976).

3. Early in the trial the plaintiffs had placed in evidence without objection the defendant's urban renewal plan published in 1964, which showed the perimeter of the area to be redeveloped, the parcels which would be acquired, and the buildings which would be rehabilitated, as well as buildings to be constructed. A short time later plaintiffs' counsel offered a second plan published by the defendant, revised as of November, 1974, showing the waterfront renewal area, and a single photograph taken in June, 1977 (three years after the taking), showing an overhead view of the renewal area. Both exhibits were met by the objection that they tended to enlarge the jury's view of value by exposing them to changes that occurred after the taking. The judge did not commit an abuse of discretion in admitting either exhibit. The 1974 redevelopment plan had relevance to show the perimeter of the renewal area as of the date of the taking, as opposed to its perimeter when the prospect was announced in 1964, to show development existing in the area in 1974 independent of the renewal project, and to give support to the position of the plaintiffs' expert that the highest and best use of the property was eventual development. The photograph had relevance to distinguish features of the area which existed in 1974, as opposed to those which came into existence later. At the time of the introduction of the plan and just prior to the introduction of the photo, the jury received detailed instructions that the landowner is entitled to damages equal to the land's value prior to the commencement of the public work which necessitates the taking; that where the value of the land is enhanced because it is known that the land will be taken by eminent domain, the landowner is not entitled to the increase in value; and, conversely, where the land's value is decreased because of the impending taking, the landowner is not required to suffer the loss. *Lipinski* v. *Lynn Redevelop-*

*ment Authy.,* 355 Mass. 550, 553-554 (1969). These in-
structions were repeated again in the charge. We do not
assume that the jury disregarded the cautions given that
controlled the use of the evidence. *Ferris* v. *Turner,* 320
Mass. 555, 558 (1947). *DiIorio* v. *Tipaldi,* 4 Mass. App. Ct.
640, 646-647 (1976). Moreover, the photograph added
nothing more to what the jury had already seen when they
were taken on the view at the start of the case.

   4. The defendant claims that a reference in closing ar-
gument by the plaintiffs' counsel to the fact that the
landowners had paid real estate taxes on the property
during the ten year period from the first public notice of
the project to the date of the actual taking, and his men-
tion of the amount of the taxes paid (approximately
$118,000), served to inflame and prejudice the jury. The
arguments were not stenographically recorded and there
is no complete record as to what precisely was said.
However, the trial judge at the bench conference in con-
sidering the defendant's objection indicated as to the ar-
gument he had just heard, "I haven't interpreted that
language that way." We are reluctant to assume that
the argument was prejudicial when the trial judge specif-
ically felt it was not. See *Evans* v. *Multicon Constr.
Corp.,* 6 Mass. App. Ct. 291, 294-295 (1978). Moreover,
the judge, exercising prudence and acting at the request
of the defendant's counsel, specifically instructed the
jury in his charge that the real estate taxes were not an
element of fair market value and that the taxes were to
be disregarded in their calculations. There was no re-
quest for any further instructions (*Tuttle* v. *McGeeney,*
344 Mass. 200, 207 [1962]), or objection to the instruc-
tions given on the point (*Kane* v. *Fields Corner Grille,
Inc.,* 341 Mass. 640, 646 [1961]); that ends the matter at
this level. Other assertions pertaining to this portion of
the argument are not supported by the record or are
otherwise disposed of by the preceding discussion.

   5. As a basis for its motion for a new trial, the defend-
ant argued that the verdict was excessive, against the

evidence and the weight of the evidence, against the law, and the result of prejudice of the jury by the view taken on the opening day of trial. All these grounds cluster around a single theme: that the plaintiffs' evidence permitted the jury to consider the enhanced value of the property as a result of the substantial improvements in the urban renewal area which had been effected by or under the sponsorship of the defendant.

There is nothing in the record to indicate that the jury were prejudiced by anything they saw on the view. There was no objection on the defendant's part to the view being taken, and counsels' openings as to the view, and the judge's instructions thereon, kept that aspect of the case in proper perspective. See *Byfield* v. *Newton*, 247 Mass. 46, 60 (1923) (G. L. c. 79, § 22, which provides for a jury view at the request of either party, merely requires a view of the property in the condition in which it may be at the time of the jury trial).

There is no question that the extraordinary length of time (ten years) from the first notice of contemplated extensive urban renewal for the area to the date of the actual taking made the trial more difficult. Both counsel in the presentations of their proofs danced like moths around a flame in dealing with the question of the property's enhancement or depreciation as a result of the project. But a careful reading of the testimony reveals that the experts applied proper standards in their valuations. The defendant's experts in their capitalization approach used 1974 parking fees, a 1974 capitalization rate, 1974 real estate taxes and expenses and did not consider the buildings in the area as of 1964. The plaintiffs' expert in his market analysis confined himself to 1974 data, and, in order to avoid the effect that the condition of that area might have had on value, avoided comparable sales within the redevelopment area. His reference to development which had taken place in the area of and along the waterfront was carefully limited to development that occurred prior to and independent of

the renewal project. There is nothing to suggest that any of the experts, particularly the plaintiffs', relied on false syllogisms in their calculations; their opinions were all based on facts that kept the enhancement problem in mind and fell within the range of imaginative conceptualization that is to be expected in such cases. Moreover, the judge throughout made it plain to the jury that enhancement or depreciation of value caused by the taking or by the public improvement for which the taking was made could not be considered. All his actions and instructions complied with and were supported by the cases on the subject. See *Cole* v. *Boston Edison Co.,* 338 Mass. 661, 665-666 (1959); *Zambarano* v. *Massachusetts Turnpike Authy.,* 350 Mass. 485, 486-487 (1966); *Burchell* v. *Commonwealth,* 350 Mass. 488, 489-490 (1966); *Alden* v. *Commonwealth,* 351 Mass. 83 (1966); *Lipinski* v. *Lynn Redevelopment Authy.,* 355 Mass. at 553. See generally 4 Nichols, Eminent Domain § 12.3151[5] (rev. 3d ed. 1979). The size of the verdict was within the competent evidence presented as to value. "It is to be assumed that the jury applied to the facts as they found them the law as laid down by the court." *Marlborough Bldg. Assn.* v. *American Broaching Mach. Co.,* 234 Mass. 506, 509 (1920). *DiIorio* v. *Tipaldi,* 4 Mass. App. Ct. at 646-647. There thus was no abuse of discretion by the judge in the denial of the defendant's motion for a new trial. *Statkus* v. *Metropolitan Transit Authy.,* 335 Mass. 172, 174-175 (1956). *Saeli* v. *Mangino,* 353 Mass. 591, 593 (1968). *McKenna* v. *Ward Foods, Inc.,* 360 Mass. 848 (1971). *Forte* v. *Muzi Motors, Inc.,* 5 Mass. App. Ct. 700, 701-702 (1977), and cases cited.

*Judgment affirmed.*
*Order denying motion for*
*new trial affirmed.*